Jeffory W. MICKELSON, et
al., Respondents,

v.

AMERICAN FAMILY MUTUAL INSUR-
ANCE COMPANY, Defendant,

and

Mutual Service Casualty Insurance
Company, Appellant.

No. C5-81-1378.

Supreme Court of Minnesota.

Feb. 11, 1983.
Rehearing Denied March 23, 1983.

Hessian, McKasy & Soderberg, James A. Stein and Albert F. Kosek, Minneapolis, for appellant.

Philip J. Levy, Minneapolis, for Mickelson, et al.

Peterson Bell & Converse, Willard L. Converse and Pamela J. Converse, St. Paul, for American Family Mut. Ins. Co.

COYNE, Justice.

This is an appeal from an order granting summary judgment. Plaintiff Jeffory W. Mickelson asserted claims for basic economic loss benefits against American Family Mutual Insurance Company (American Family), the insurer on a policy in which Mickelson's pick-up truck is the described vehicle, or, in the alternative, against Mutual Service Casualty Insurance Company (Mutual Service), the reparations obligor under the assigned claims plan, Minn.Stat. § 65B.63 (1982). On cross motions for summary judgment, the district court granted summary judgment in favor of American Family against Mickelson and in favor of Mickelson against Mutual Service. Mutual Service appeals and Mickelson seeks review of that portion of the order granting judgment in favor of American Family.

The facts of the case are not in dispute. On November 14, 1980, Mickelson was a pedestrian crossing an intersection when he was struck and injured by an automobile owned by an uninsured driver. Mickelson owned a 1972 Ford pick-up truck, but he did not maintain any plan of reparation security. Mickelson's pick-up truck was, however, the vehicle described in an automobile insurance policy in which Carol Rose Mueller was the named insured. Mickelson and Mueller had lived together for approximate-ly seven years, sharing income and expenses. They were not married or related in any other way.

Mueller was the principal driver of the Ford truck. According to Mickelson, she drove it 80 to 90% of the time. Mickelson had a motorcycle, which was uninsured. Mickelson has a very poor driving record which includes seven moving traffic violations between May 1976 and October 1980 and a 30-day suspension of his driver's license as a habitual violator under Minn. Stat. § 171.18, subd. 4 (1982). In her application for the automobile insurance policy issued by American Family, Mueller represented that she was the owner and title-holder of the 1972 Ford pick-up truck, that she was the sole operator of the vehicle, and that neither she nor any other driver of the vehicle had ever received any tickets or citations for moving traffic violations or had had a driver's license revoked or suspended.

American Family denied Mickelson's claim for basic economic loss benefits under its policy issued to Mueller on the ground that Mickelson was not an insured either under the terms of the policy or within the provisions of the Minnesota No-Fault Automobile Insurance Act. Mickelson then made application to the Minnesota Automobile Assigned Claims Bureau pursuant to Minn.Stat. § 65B.63, subd. 2 (1982).[1] Mickelson's claim was assigned to Mutual Service, which denied the claim on the ground that, pursuant to the provisions of Minn. Stat. § 65B.64, subd. 3 (1982)[2], Mickelson was disqualified from benefits.

---

1. Minn.Stat. § 65B.63, subd. 2, provides as follows:

The assigned claims bureau shall promptly assign each claim and notify the claimant of the identity and address of the assignee-obligor of the claim. Claims shall be assigned so as to minimize inconvenience to claimants. The assignee thereafter has rights and obligations as if he had issued a policy of basic economic loss insurance complying with sections 65B.41 to 65B.71 applicable to the injury or, in case of financial inability of a reparation obligor to perform its obligations, as if the assignee had written the applicable reparation insurance, undertaken the self-insur-ance, or lawfully obligated itself to pay basic economic loss benefits.

2. Minn.Stat. § 65B.64, subd. 3, provides as follows:

A person shall not be entitled to basic economic loss benefits through the assigned claims plan with respect to injury which was sustained if at the time of such injury the injured person was the owner of a private passenger motor vehicle for which security is required under sections 65B.41 to 65B.71 and he failed to have such security in effect. Members of the owner's household other than minor children shall also be disqualified

Mickelson and Mueller then commenced an action seeking a declaration that Mickelson was an insured under the American Family policy or reformation of the policy to include Mickelson as an insured. In the alternative, plaintiffs sought judgment against Mutual Service under the assigned claims plan. The district court ruled that Mickelson—who was neither the named insured nor the spouse, relative, or minor in the custody of the named insured—was not an insured under the American Family policy and that there was no basis for reformation of the policy. The district court concluded, however, that Mickelson was entitled to participate in the assigned claims plan on the ground that the pick-up truck was insured pursuant to the Minnesota No-Fault Automobile Insurance Act and that Minn.Stat. § 65B.64, subd. 3, does not require that the owner be an insured under the plan of reparation security.

■ Initially, we hold that Jeffory W. Mickelson is not an "insured" either under the terms of the American Family automobile insurance policy in which Carol Rose Mueller is the named insured or within the statutory definition set out at Minn.Stat. § 65B.43, subd. 5 (1982).

Minn.Stat. § 65B.43, subd. 5, provides in pertinent part:

> "Insured" means an insured under a plan of reparation security as provided by sections 65B.41 to 65B.71, including the named insured and the following persons not identified by name as an insured while (a) residing in the same household with the named insured and (b) not identified by name in any other contract for a plan of reparation security complying with sections 65B.41 to 65B.71 as an insured:
> (1) a spouse,
> (2) other relative of a named insured or
> (3) a minor in the custody of a named insured * * *.

Although the statute does not define either "spouse" or "relative," both are terms of common usage and generally accepted

meaning: "spouse" means either member of a married couple, and "relative" means one connected by blood or marriage. The plain meaning of the terms does not permit construction to include those who, like Mickelson, are unrelated to the named insured although they live in the same household, commingle their incomes, and share expenses.

The personal injury protection coverage of the American Family policy affords coverage to the named insured or a relative who is injured as the result of an accident while occupying any motor vehicle or who is injured through being struck by any motor vehicle or motorcycle while a pedestrian. In addition, protection is extended to any other person who is injured while an occupant of the insured motor vehicle or while a pedestrian as the result of an accident involving the insured motor vehicle. The policy defines "relative":

> Relative means the spouse or any person related to the named insured by blood, marriage or adoption. This includes a minor in custody of the named insured, spouse or such related person, who lives in the same household as the named insured, even if temporarily living elsewhere.

Although the policy definition of "relative" includes a broader class of persons than does the term "relative" as it is used in section 65B.43, subd. 5, it nevertheless limits in clear and unambiguous language the class of included adults to the named insured's spouse or any person related to the named insured by blood, marriage or adoption. Mickelson is neither Mueller's spouse nor related to her by blood, marriage or adoption. Accordingly, while the American Family policy would afford him personal injury protection if he were injured while he occupied the Ford pick-up truck or if he were struck by the Ford truck, he is not entitled to such protection while occupying any other motor vehicle or with respect to the injury he sustained while a pedestrian through being struck by a motor vehicle other than his Ford truck.

from benefits through the assigned claims plan.

Having determined that Mickelson is not entitled to basic economic loss benefits under the American Family policy, we address the question of his eligibility under the assigned claims plan, Minn.Stat. §§ 65B.63 to 65B.66 (1982).

Minn.Stat. § 65B.64, subd. 3 (1982) expressly excludes from the assigned claims plan any owner who fails to insure his vehicle:

A person shall not be entitled to basic economic loss benefits through the assigned claims plan with respect to injury which was sustained if at the time of such injury the injured person was the *owner* of a private passenger motor vehicle for which security is required under sections 65B.41 to 65B.71 and *he* [i.e. the owner] failed to have *such security* in effect. (Emphasis added).

The district court reasoned that since Mickelson's truck was insured at the time of the accident and since Minn.Stat. § 65B.64, subd. 3, does not expressly require that the owner be an insured under the reparation security, Mickelson was eligible to participate in the assigned claims plan.

To be sure, section 65B.64, subd. 3, does not expressly state that the owner must be an insured under the required security, but the security to which section 65B.64, subd. 3, refers is the security required under sections 65B.41 to 65B.71. Thus, section 65B.64, subd. 3, imports by reference the provisions of section 65B.48, subdivision 1, which provides that "[e]very owner of a motor vehicle ... *shall* maintain ... a plan of reparation security" which shall not only insure against loss resulting from liability arising out of the ownership, maintenance, operation or use of the vehicle but also "shall provide for basic economic loss benefits." (Emphasis added). Section 65B.64, subd. 3, also incorporates by reference the provisions of section 65B.43, subd. 5, which declares that the named insured is an insured under any plan of reparation security provided by sections 65B.41 to 65B.71. Implicit in the interlaced sections 65B.41 to

65B.71 which constitute the Minnesota No-Fault Automobile Insurance Act is the requirement that the owner of a motor vehicle, section 65B.43, subd. 4, be the named insured under the plan of reparation security covering the vehicle, section 65B.48, subds. 7 and 8, just as it is merely implicit that the plan of reparation security shall provide basic economic loss benefits to an insured, section 65B.43, subd. 5, who is a pedestrian injured by being struck by a motor vehicle. Minn.Stat. § 65B.47, subd. 3 (1982).

■ The implication that the plan of reparation security which the owner is required to maintain is a plan in which the owner is the named insured is borne out both by the legislative history of the No-Fault Act and by judicial construction. The report of the Automobile Liability Study Commission to the 1973 Legislature recommended compulsory insurance providing both the basic $10,000 first party insurance—i.e., basic economic loss benefits—and liability insurance —i.e. residual liability insurance. Pointing out that compulsory first-party insurance was necessary to close the gaps in the then existing system of tort liability, the Commission said, "In our opinion, it is only equitable to *compel anyone who owns* such a dangerous piece of machinery as *an automobile to provide this basic security for himself,* his family members, and his friends." Minnesota Automobile Liability Study Commission, Report to the 1973 Legislature, p. 20 (emphasis added). The provision implementing the Commission's recommendation[3] was enacted as Minn.Stat. § 65B.48, Subdivision 1 (1982). This court has recognized that the purpose of the first-party provisions of the no-fault act, the provisions for basic economic loss benefits, is to protect persons, not vehicles. *Wasche v. Milbank Mutual Insurance Co.,* 268 N.W.2d 913, 918 (Minn.1978); *Roepke v. Western National Mutual Insurance Co.,* 302 N.W.2d 350, 353 (Minn.1981). The plan of reparation security covering Mickelson's truck provides for the payment to him of

---

**3.** Section 8, subdivision 1, Bill Implementing the "Commission Proposal Minnesota Automo- bile Liability Study Commission, Report to the 1973 Legislature, Appendix B. p. 110.

economic loss benefits only in the event that he is an occupant of or struck by the secured vehicle. Since Mickelson is not an insured under the plan of reparation security securing *his* vehicle, that plan affords him *no* protection with respect to basic economic loss benefits when he occupies any other vehicle or when he is a pedestrian (unless he is injured as the result of an accident involving the insured motor vehicle), and to that extent the plan securing his vehicle does not comply with the requirements of the No-Fault Act. Thus, although the policy insuring Mickelson's truck afforded the required liability insurance and some of the basic economic loss benefits contemplated by the Act, it did not constitute the security required by the Minnesota No-Fault Automobile Insurance Act. Accordingly, under the plain and unambiguous language of section 65B.64, subd. 3, Mickelson is ineligible to receive through the assigned claims plan those economic loss benefits which should have been, but are not, provided by the plan of reparation security covering Mickelson's truck.

Moreover, it must be remembered that the absence of first-party protection for Mickelson as the named insured is the product of material misrepresentations which can only be characterized as purposeful. In her application for the automobile policy, Carol Rose Mueller, who was an insurance company employee, stated that she was the owner, that she was the sole operator of the Ford pick-up truck, and that neither she nor any other driver of the vehicle had ever received any tickets or citations for moving traffic violations or had a driver's license revoked or suspended. By his own estimate Mickelson drove the truck 10% to 20% of the time. Given Mickelson's abysmal driving record, there can be little doubt that those misrepresentations materially increased the insurer's risk and that neither American

Family nor any other insurer would have issued its policy of insurance voluntarily had its inquiry concerning the ownership and operation of the vehicle elicited truthful responses. Insurance would have been available only through the assigned risk plan at a significantly higher premium.

The legislature has decreed that relief of the economic distress of automobile accident victims shall be achieved by requiring insurers to offer, and automobile owners to maintain, automobile insurance policies which provide prompt payment of specified basic economis loss benefits. Minn.Stat. § 65B.42(1) (1982). Unavoidable gaps in the comprehensive protection available under the No-Fault Act are closed by the assigned claims plan, which provides for the payment of basic economic loss benefits to certain injured persons—primarily those who cannot procure their own protection because neither they nor any relative residing in the same household owns an automobile or because of their youth. Expressly excluded, however, from entitlement under the assigned claims plan are those who are in a position to secure their own protection—owners of vehicles who fail to have the required security in effect and adult members of their households.[4] To extend entitlement under the assigned claims plan to an owner who has intentionally removed himself from the status of an insured under the security covering his vehicle in order to avoid the payment of the additional premiums attributable to his poor driving record would be an unwarranted subversion of the clear legislative expression of intent.

The order granting summary judgment in favor of American Family against plaintiffs is affirmed. The order granting summary judgment in favor of plaintiff Jeffory W. Mickelson against Mutual Service is reversed.

Affirmed in part, reversed in part.

---

4. In *Iverson v. State Farm Mutual Automobile Insurance Co.,* 295 N.W.2d 573 (Minn.1980), it was recognized that if the victim of a fatal automobile accident was not an insured under any policy of insurance affording basic economic loss benefits, the decedent's failure to obtain insurance on his owned vehicle would preclude his widow from participating in the assigned claims plan.

SCOTT, Justice (dissenting).

I must respectfully dissent to the majority's holding that the respondent is not eligible for basic economic loss benefits through the assigned claims plan. The majority, repulsed by the misrepresentations of Carole Rose Mueller, the insured, imputes those misrepresentations to plaintiff Mickelson and reaches out for an issue not raised by either party on this appeal to deny coverage.

We are presently in the formative stage of "no-fault" interpretation. It is vital that we proceed systematically and logically during the embryonic period. When a vehicle is admittedly insured, to sow the seeds of confusion by an interpretation never contemplated by the Act fails to cement a solid foundation for the future.

I agree with the majority on the first issue, but cannot on the second. Minn.Stat. § 65B.64, subd. 3, provides in part:

A person shall not be entitled to basic economic loss benefits through the assigned claims plan with respect to injury which was sustained if at the time of such injury the injured person was the owner of a private passenger motor vehicle for which security is required under sections 65B.41 to 65B.71 and he failed to have such security in effect.

The trial court determined that Mickelson's truck was insured at the time of the accident under Mueller's policy with American Family. Furthermore, the trial court reasoned that Minn.Stat. § 65B.64, subd. 3, does not require that the owner be an insured under the reparation security, and refused to read such a requirement into the No-Fault Act. Thus, the trial court found that Mickelson was entitled to participate in the assigned claims plan.

The trial court's interpretation is sound. The majority's interpretation of Minn.Stat.

§ 65B.64, subd. 3, misses its mark. If an owner of a private passenger motor vehicle is an "insured," then he would not need to be covered under the assigned claims plan. The sanction in the statute for the failure to have security in effect on an owned private passenger motor vehicle therefore would have no meaning. Such an interpretation makes no sense.

The vehicle Mickelson owned was insured. American Family acknowledges this fact. Mickelson fits the description of those persons whom the assigned claims plan was designed to cover. In a report to the 1973 session of the Minnesota Legislature, the Automobile Liability Study Commission, in describing the proposed assigned claims plan, stated:

Primarily such a plan would be used by habitual pedestrians who do not have coverage of their own and who are struck by an uninsured or out-of-state motorist.

Minnesota Automobile Liability Study Commission, Report to the 1973 Legislature, p. 20. Although the evidence is unclear as to whether he was an habitual pedestrian, Mickelson was a pedestrian when injured and he was at most an infrequent driver of the pick-up truck registered in his name. Furthermore, Mickelson does not have coverage of his own but the vehicle he owns has no-fault coverage. He was struck by an uninsured, out-of-state motorist. It is just such a person that the No-Fault Act was designed to protect.[1]

It is obvious that Mickelson could not be guilty of the criminal offense dictated by the Act. The criminal penalty goes hand-in-hand with the section involved in this case. As we stated in *Iverson v. State Farm Mut. Auto. Ins. Co.,* 295 N.W.2d 573, 574 (1980):

To achieve compliance with this compulsory insurance requirement, the Act pro-

---

1. Think of a grandmother, who is hit as a pedestrian under circumstances similar to this case, and it is discovered that she is the registered owner of an automobile used by her granddaughter away at college. The grand-
daughter, whose responsibility it is to maintain the vehicle, has taken out insurance coverage in her own name. The grandmother would not be covered for her injuries under the majority opinion.

vides that an owner who fails to obtain the required insurance on an owned vehicle is guilty of a misdemeanor and, upon conviction, the owner's driver's license as well as motor vehicle registration shall be revoked for up to 12 months and will not be reinstated until the required insurance is obtained. § 65B.67. In addition, such an injured owner is expressly prohibited from recovering basic economic loss benefits through the assigned claims plan. § 65B.64, subd. 3.

There is nothing in our cases which can be construed to mean that an automobile owner must obtain insurance covering himself. Mickelson should therefore not be excluded and should be entitled to participate in the assigned claims plan because the automobile which he owns is covered by reparation security as required by Minn. Stat. § 65B.64, subd. 3. We should not read a clause into the Act that is not there just to satisfy a certain factual situation.

The trial judge was correct and should be affirmed.

YETKA, Justice.

I join in the dissent of Justice SCOTT.