**Michele MOHS, individually and as parent and natural guardian of Jessica Mohs, a minor, and Jessica Mohs, individually, Appellants,**

v.

**AETNA CASUALTY AND SURETY COMPANY, Respondent.**

**and**

**Renee K. CYR, Appellant,**

v.

**MUTUAL SERVICE CASUALTY INSURANCE COMPANY, Respondent.**

**Nos. C4-83-1392, C4-83-1957.**

Court of Appeals of Minnesota.

May 22, 1984.

Robert J. Healy, Minneapolis, for Mohs.

James A. Stein, Hessian, McKasy & Soderberg, Saint Paul, for Aetna Cas. and Sur. Co. and Mut. Service Cas. Ins. Co.

Diane C. Hanson, Schwebel, Goetz, Sieben & Hanson, Minneapolis, for Cyr.

Hubert H. Humphrey, III, Atty. Gen., Peggy L. Bunch, Sp. Asst. Atty. Gen., St. Paul, for amicus curiae State of Minn.

Heard, considered and decided by POPO-VICH, C.J., and FORSBERG and RANDALL, JJ.

## OPINION

FORSBERG, Judge.

This is an appeal from a declaratory judgment which determined rights under a portion of the Minnesota No-Fault Automobile Insurance Act relating to the assigned claims plan, Minn.Stat. § 65B.63–§ 65B.65.

The trial court granted summary judgment in favor of respondent and denied appellant's motion for summary judgment. We affirm.

## FACTS

Plaintiff-appellant was permanently injured on January 30, 1982, while she was riding as a passenger in a car operated by Melanie Olson. The Olson car was struck by a car operated by Ivan Ische. The Olson vehicle and the Ische vehicle were not insured. Plaintiff-appellant did not

own a vehicle, nor did she reside with any relatives who owned a vehicle. She was, therefore, uninsured and proceeded to apply for insurance benefits through the Minnesota automobile assigned claims bureau pursuant to § 65B.63 of the Minnesota No-Fault Act. Respondent, Mutual Service Casualty Insurance Company, was designated the assignee to handle her claim for benefits. Respondent paid appellant medical and wage loss benefits, but refused to pay appellant uninsured motorists benefits, alleging that § 65B.63 only requires payment of economic loss benefits. We agree.

## ISSUES

1. Does Minn.Stat. § 65B.63, subd. 2 provide for uninsured motorist benefits in addition to basic economic loss benefits?

2. Is the denial of uninsured motorist benefits an unconstitutional denial of equal protection of the laws?

## ANALYSIS

### I.

The legislature included in the Minnesota No-Fault Automobile Insurance Act (Minn. Stat. §§ 65B.61 to 65B.71) a section requiring the creation of an assigned claims bureau. This section 65B.63 provides as follows:

> Subdivision 1. Reparation obligors providing basic economic loss insurance in this state may organize and maintain, subject to approval and regulation by the commissioner, an assigned claims bureau and an assigned claims plan, and adopt rules for their operation and for the assessment of costs on a fair and equitable basis consistent with sections 65B.41 to 65B.71. If such obligors do not organize and continuously maintain an assigned claims bureau and an assigned claims plan in a manner considered by the commissioner of insurance to be consistent with sections 65B.41 to 65B.71, he shall organize and maintain an assigned claims bureau and an assigned claims plan. Each reparation obligor providing basic economic loss insurance in this state shall participate in the assigned claims bureau and the assigned claims plan. Costs incurred shall be allocated fairly and equitably among the reparation obligors.

> Subd. 2. The assigned claims bureau shall promptly assign each claim and notify the claimant of the identity and address of the assignee-obligor of the claim. Claims shall be assigned so as to minimize inconvenience to claimants. The assignee thereafter has rights and obligations as if he had issued a policy of basic economic loss insurance complying with sections 65B.41 to 65B.71 applicable to the injury or, in case of financial inability of a reparation obligor to perform its obligations, as if the assignee had written the applicable reparation insurance, undertaken the self-insurance, or lawfully obligated itself to pay basic economic loss benefits.

It is the position of the appellant that the assigned claims plan requires an assignee to pay all benefits which are required by the provisions of the No-Fault Act (sections 65B.41–65B.71). The respondent-assignee argues that the above language requires payment of only basic economic loss benefits, and not the other benefits which an insurance company is required to offer under a regular insurance policy. Specifically at issue here is the language in section 65B.63 subd. 2 "as if he had issued a policy of basic economic loss insurance complying with sections 65B.41 to 65B.71."

Appellant argues that the language "The assignee thereafter has rights and obligations as if he had issued a policy of basic economic loss insurance complying with sections 65B.41 to 65B.71 applicable to the injury ..." makes it "abundantly clear" that the insurer takes on all obligations imposed by the Act. Unfortunately, nowhere in the Act is included a definition of "basic economic loss insurance," nor has the Minnesota Supreme Court defined that term. Appellant seems to ignore the term "basic economic loss insurance" as modifying the phrase "complying with sections 65B.41 to 65B.71." However, "basic eco-

nomic loss benefits" is defined. Such benefits do not include uninsured motorist coverage, but are limited to medical expenses, income loss, replacement services loss, funeral expense loss, survivor's economic loss and survivor's replacement service loss. A final reference to basic economic loss benefits in the last sentence of § 65B.63, subd. 2 indicates that such term is used interchangeably with basic economic loss insurance.

■ It is also helpful to examine the Uniform Motor Vehicle Accident Reparations Act[1] from which the Minnesota No-Fault Act was derived.[2] Section 18(a) of the Uniform Act, which is virtually identical to Minnesota Statutes, Section 65B.64, subd. 1, states, in part, as follows:

"A person entitled to basic reparation benefits because of injury covered by this Act may obtain them through the assigned claims plan..."

"Basic reparation benefits" under the Uniform Act are the equivalent of basic economic loss benefits under the Minnesota Act. The Commissioner's comment to Section 19 of the Uniform Act clearly shows the intent in establishing an assigned claims plan. Those comments state that the purpose of the bureau is to provide basic reparation benefits to victims of motor vehicle accidents. A definition of basic reparation benefits in Section 1 of the Uniform Act does not include any reference to damages for non-economic detriment (which includes uninsured motorist coverage).

Moreover, an additional section of the Minnesota Act, which describes persons entitled to participate in the assigned claims plan, makes reference only to basic economic loss benefits and nothing more. Minn.Stat. § 65B.64 provides in part:

Subdivision 1. A person entitled to basic economic loss benefits because of injury covered by sections 65B.41 to 65B.71 may obtain basic economic loss benefits through the assigned claims plan or bureau established pursuant to section 65B.63 and in accordance with the provisions for making assigned claims provided in sections 65B.41 to 65B.71, if:

(a) The person is 14 years old or younger and basic economic loss benefits are not applicable to his injury because of section 65B.58;

(b) Basic economic loss benefits are not applicable to the injury for some reason other than those specified in sections 65B.58, 65B.59, or 65B.60;

(c) The plan of reparation security applicable to the injury cannot be identified; or

(d) A claim for basic economic loss benefits is rejected by a reparation obligor on some ground other than the person is not entitled to basic economic loss benefits under sections 65B.41 to 65B.71.

Additional evidence that the assigned claims section is limited to economic loss benefits is contained in the right of subrogation granted the assigned claims bureau or its assignee in Minn.Stat. § 65B.64, subd. 2, and in the limitation in § 65B.64 subd. 3 upon persons entitled to claim benefits through the assigned claims plan. It would be wholly illogical to assume that the legislature intended by these sections to provide uninsured motorist coverage under the assigned claims plan but was interested in providing subrogation rights only for basic economic loss benefits paid, or that persons not carrying the insurance required by the No-Fault Act should be precluded from basic economic loss bene-

**1.** *See,* 13 Uniform Laws Anno. 349 (1975). This Act was drafted by the National Conference of Commissioners on Uniform State Laws in 1972 and was approved and recommended for enactment in all states. The Act has been used as a basis for most of the no-fault laws that have been enacted. Portions of the Minnesota No-Fault Act were taken directly from this Uniform Act. The creation of the assigned claims bureau is one of those provisions that the Minnesota Legislature drew from the Uniform Act.

**2.** The intention of the draftees of a uniform act becomes the legislative intention upon enactment. *See,* Minn.Stat. § 645.22; *Layne-Minnesota Co. v. Regents of the University of Minnesota,* 266 Minn. 284, 123 N.W.2d 371 (1963).

fits but not from uninsured motorist coverage. The only possible conclusion is that the legislature did not intend to include uninsured motorist coverage within the benefits provided by the assigned claims bureau.

The report of the Automobile Liability Study Commission to the 1973 Legislature has also been cited by the Minnesota Supreme Court as beneficial in determining the intent behind the Minnesota No-Fault Act. *See Mickelson v. American Family Mut. Ins. Co.*, 329 N.W.2d 814 (Minn.1983). The Commission's report recommended in Section 3(b) that an assigned claims plan be established to provide "first party benefits" to automobile accident victims "not covered by a regular first party insurance policy." At issue, then, is whether the term "first party insurance" used by the Commission meant only economic loss benefits, or whether that term was meant to include uninsured motorist benefits.

The *Mickelson* decision appears to recognize that by "first party insurance," the Commission meant "basic economic loss benefits."

> "The report of the Automobile Liability Study Commission to the 1973 Legislature recommended compulsory insurance providing both the basic $10,000 first party insurance—i.e., basic economic loss benefits—and liability insurance—i.e. residual liability insurance.
>
> \*    \*    \*    \*    \*    \*
>
> The provision implementing the Commission's recommendation was enacted as Minn.Stat. § 65B.48, Subdivision 1 (1982).[3]
>
> \*    \*    \*    \*    \*    \*
>
> This court has recognized that the purpose of the first-party provisions of the no-fault act, the provisions for basic economic loss benefits, is to protect persons, not vehicles."

---

**3.** Minn.Stat. Sec. 65B.48 subd. 1 mentions basic economic loss benefits and residual liability, but does not mention uninsured motorist coverage.

**4.** *See, e.g., Kaysen v. Federal Ins. Co.*, 268 N.W.2d 920, 925 (Minn.1978), *citing Nygaard v.*

*Mickelson*, 329 N.W.2d at 817. (Footnote omitted.)

Although uninsured motorist coverage has also been stated to "protect persons, not vehicles,"[4] a review of the Commission's report reveals that "first party insurance" means "basic economic loss benefits," and does not include uninsured motorist coverage. Section 4(a) of the report indicates that "[t]he basic first party automobile insurance policy should be compulsory." A later subdivision notes that "[u]ninsured motorist coverage should remain a mandatory feature of all liability insurance policies in Minnesota." This later subdivision appears entirely independent of the prior mention of basic first party insurance.

■ Furthermore, in applying the canons of statutory construction, it should be noted that where a statute contains both specific and general provisions, it is best to reconcile both provisions if possible. Minn. Stat. § 645.26; *Ehlert v. Graue*, 292 Minn. 393, 195 N.W.2d 823 (1972). In the assigned claims plan provision at issue the general language—"sections 65B.41 to 65B.71"—appears to be qualified by the specific—"basic economic loss insurance."

Finally, the purpose of the No-Fault Act must be examined. One of those purposes is "[t]o relieve the severe economic distress of uncompensated victims of automobile accidents" by requiring insurance companies to offer insurance which would "provide prompt payment of specified *basic economic loss benefits*" to all accident victims regardless of fault. (Emph. supp.) Minn. Stat. § 65B.42(1).

■ In conclusion, we find that it is the intent of the legislature to limit recovery under the assigned claims plan to basic economic loss benefits.

*State Farm Mutual Auto Ins. Co.*, 301 Minn. 10, 19, 221 N.W.2d 151, 157 (1974) and *Northland Ins. Co. v. West*, 294 Minn. 368, 373, 201 N.W.2d 133, 135 (1972).

## II.

Appellant further argues that because uninsured motorist coverage is not permitted in the assigned claims plan, the statute is unconstitutional for failure to provide equal protection of the laws to insureds under such plan, since insureds with policies would be allowed uninsured motorists benefits, while claimants under the "Plan" would not.

■ It should be noted that every statute enacted by the Legislature carries a great presumption of validity in all respects. As stated in *Federal Distillers, Inc. v. State*, 304 Minn. 28, 39, 229 N.W.2d 144, 154 (1975), *appeal dismissed*, 423 U.S. 908, 96 S.Ct. 209, 46 L.Ed.2d 137 (1975):

> "[E]very legislative enactment comes to the courts with a *presumption in favor of its constitutionality* .... The burden of proof is on the challenging parties to show *beyond a reasonable doubt* that the act violates some particular constitutional provision."

(Emph. supp.)

■ The Fourteenth Amendment of the United States Constitution and Article I, Section 2 of the Minnesota Constitution guarantee the equal protection of laws to all persons. The Minnesota Supreme Court has set forth the standards which must be applied in determining whether a law denies a party equal protection of the law:

> This court has listed three factors in measuring a statutory classification against the equal protection requirement:
>
> "(1) The distinctions which separate those included within the classification from those excluded must not be manifestly arbitrary or fanciful but must be genuine and substantial, thereby providing a natural and reasonable basis to justify legislation adapted to peculiar conditions and needs; (2) the classification must be genuine or relevant to the purposes of the law; that is, there must be an evident connection between the distinctive needs peculiar to the class and the prescribed remedy; (3) the purpose of the statute must be one

that the state can legitimately attempt to achieve."

*Guilliams v. Commissioner of Revenue,* 299 N.W.2d 138, 142 (Minn.1980), *quoting Miller Brewing Company v. State,* 284 N.W.2d 353, 356 (Minn.1979).

Appellant argues that the distinction between privately insured persons and persons assigned to the Plan is arbitrary and fanciful and, further, that the classification is not genuine or relevant to the purpose of the law.

The legislative purpose of the Act is to see that all motor vehicle accident victims have available a legislatively decreed minimum of economic loss benefits.

The trial court stated in its Memorandum:

> This purpose is achieved by the classification—otherwise no benefits would be available to the assigned claims plan claimants at all. Further, the purpose is achieved by the creation of classes genuinely and substantially distinct. Insured victims have paid insurance premiums to receive the benefits they receive; uninsured victims have not made any such payments. Indeed, their benefits ultimately derive from the premiums paid by automobile insurance insureds. In enacting the No Fault Act the legislature was under no compulsion to create an assigned claims bureau. Having determined as a matter of social policy that certain minimum benefits should be available to all accident victims and that they should be paid for out of automobile insurance premiums, the legislature was not obligated to extend the coverage it chose to provide uninsured victims to include all the benefits for which insureds were required to pay. The legislature did not create these classifications to preclude uninsureds from receiving benefits, rather they were created so that uninsureds would receive certain minimum benefits.

Furthermore, claimants under the assigned claims plan are not really "insureds" as appellant calls them. Minn. Stat. 65B.43, subd. 5 defines an insured as

"an insured under a plan of reparation security." In addition, Section 65B.48, subd. 1, states that a plan of reparation security is one which insures "against loss resulting from *liability* imposed by law for injury and property damage ..." (emph. supp.), and includes coverage for basic economic loss benefits *and* residual liability coverage. It is apparent that appellant was in no sense an "insured" and that such a concept is incompatible with her status as a claimant of the bureau.

In conclusion, it is the opinion of the Court that there is a relevant basis for the differentiation between claimants and insureds. Individuals who own automobiles are required by law to purchase a policy of automobile insurance and pay a premium for that policy. One of the coverages required to be purchased *along with* the basic no-fault policy is uninsured motorist coverage. Others who do not own automobiles and who are not required to purchase policies of automobile insurance are entitled to recover simply their basic economic loss benefits through an insurance-pooling mechanism known as the assigned claims bureau. In so doing, the Legislature created a set of benefits for those individuals, which had previously never existed. Thus, although there is a difference in treatment between these two groups of individuals, that difference is relevant, reasonable, and legitimate to the purpose of the statute.

## DECISION

Affirmed.