**Mary G. BAKER, individually and as guardian for Timothy Michael Baker, a minor, Respondent,**

v.

**AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Appellant.**

**No. CX–90–346.**

Court of Appeals of Minnesota.

Sept. 11, 1990.

Review Denied Nov. 9, 1990.

James A. Stein, Hessian, McKasy & Soderberg, St. Paul, for appellant.

Kevin Joseph Deitz, Miller, Norman & Kenney, Moorhead, for respondent.

Considered and decided by HUSPENI, P.J., SHORT and KALITOWSKI, JJ.

OPINION

HUSPENI, Judge.

Respondent Mary Baker (Baker) brought this action on behalf of respondent Timothy Michael Baker, seeking survivor's economic loss benefits and funeral benefits through the Minnesota Assigned Claims Bureau as a result of the death of Timothy's mother. Appellant American Family Mutual Insurance Company (American Family), to whom the claim was assigned, denied recovery arguing that the death of Tamera Baker did not arise out of the maintenance or use of a motor vehicle and that the assigned claims plan does not cover deaths occurring outside of Minnesota. The trial court denied American Family's motion for judgment on the pleadings or in the alternative summary judgment, concluding the assigned claims plan does cover out-of-state losses. In response to the trial court's finding a genuine issue of material fact regarding whether Tamera Baker's death arose out of the maintenance or use of a motor vehicle, the parties stipulated that the death did so arise. Judgment was subsequently entered declaring that Timothy Baker is entitled to survivor's economic loss benefits. The trial court did not address Mary Baker's claim for funeral benefits. American Family has appealed.

FACTS

On February 3, 1988, Tamera Baker died of exposure and hypothermia in North Dakota. Ms. Baker, a resident of Moorhead, Minnesota, drove her uninsured motor vehicle into North Dakota, became stuck in a ditch in subzero temperatures, and was found in an unheated storage shed on a nearby farm.

Respondent Timothy Baker is the son of Tamera Baker. Respondent Mary Baker, Tamera's mother, was named Timothy's general guardian shortly after Tamera's death. A claim was submitted to the Minnesota Automobile Assigned Claims Bureau on behalf of Timothy Baker for

survivor's economic loss benefits. A claim was also made for reimbursement of funeral expenses incurred by Mary Baker. The claims were referred to American Family, one of the bureau's servicing insurance carriers.

American Family denied all the claims, and contended that the assigned claims bureau is only responsible for automobile accidents which occur within Minnesota and that Tamera Baker's death did not result from the maintenance or use of a motor vehicle.

American Family's motion for judgment on the pleadings or, in the alternative, for summary judgment was denied. Baker's motion for summary judgment was granted, in part, based on the trial court's determination that the assigned claims bureau is responsible for automobile-related deaths that occur outside the state of Minnesota. The trial court denied the portion of Baker's motion for summary judgment which sought a determination that Tamera Baker's death resulted from the maintenance or use of a motor vehicle.

Following the trial court's order, the parties stipulated that Tamera Baker's death did result from the maintenance or use of a motor vehicle. American Family appeals, arguing the trial court erred in holding the assigned claims plan covers Tamera Baker's death.

### ISSUE

Did the trial court err in determining that American Family is obligated to pay survivor's economic loss benefits and funeral expenses arising out of Tamera Baker's death in North Dakota?

### ANALYSIS

The assigned claims plan was created by the legislature as a "gap-closing" device designed to ensure that individuals who are not covered under a plan of reparation security will be entitled to coverage for their economic loss, if they satisfy the conditions for coverage. *Dahle v. Aetna Casualty & Surety Insurance Co.*, 352 N.W.2d 397, 399 (Minn.1984)

(quoting Steenson, *A Primer On Minnesota No–Fault Automobile Insurance*, 7 Wm.Mitchell L.Rev. 313, 368 n. 212 (1981)). A person who owns a motor vehicle for which insurance is required and who fails to obtain such insurance is not allowed to participate in the assigned claims plan. Minn.Stat. § 65B.64, subd. 3 (1986). However, the minor children of uninsured vehicle owners are not prohibited from participating in the plan. *Id.*

The obligations of the insurer to which a claim is assigned are set forth in the No–Fault Act:

> The assigned claims bureau shall promptly assign each claim and notify the claimant of the identity and address of the assignee-obligor of the claim. Claims shall be assigned so as to minimize inconvenience to claimants. *The assignee thereafter has rights and obligations as if the assignee had issued a policy of basic economic loss insurance complying with sections 65B.41 to 65B.71 applicable to the injury * * *.*

Minn.Stat. § 65B.63, subd. 2 (1986) (emphasis added).

American Family agrees that if Tamera Baker's death had occurred in Minnesota, Timothy Baker would have been entitled to survivor's economic loss benefits. However, American Family relies on the language of Minn.Stat. § 65B.46, subds. 1 and 2 (1986) to support its argument that because Tamera Baker's death occurred in North Dakota, Timothy Baker is not entitled to survivor's economic loss benefits. Subdivision one of section 65B.46 provides in relevant part:

> If the accident causing injury occurs in this state, *every person suffering loss from injury arising out of maintenance or use of a motor vehicle * * * has a right to basic economic loss benefits.*

*Id.* (emphasis added). Subdivision two provides in relevant part:

> If the accident causing injury occurs outside this state in the United States, United States possessions, or Canada, *the following persons and their surviving dependents* suffering loss from injury arising out of maintenance or use of a

motor vehicle * * * *have a right to basic economic loss benefits:*

(1) *insureds* * * *.

*Id.* (emphasis added).

American Family argues that comparison of the phrase "every person suffering loss" in subd. 1 with the narrower statement of who is entitled to recover basic economic loss benefits in subd. 2 indicates a legislative intent to limit the territorial application of the No–Fault Act so that in accidents occurring outside the State of Minnesota only those persons who have attained the status of an "insured" will be eligible for coverage. American Family relies on *Mohs v. Aetna Casualty and Surety Co.*, 349 N.W.2d 580 (Minn.App.1984) to support its argument that Baker should be denied coverage here. We cannot agree.

At issue in *Mohs* was whether an assigned claims plan claimant was eligible to recover uninsured/underinsured motorist benefits and whether a distinction between traditional insureds and plan claimants was constitutional. This court concluded that beneficiaries of the assigned claims plan were not entitled to uninsured/underinsured motorist benefits, *Mohs*, 349 N.W.2d at 584, and that the statutory distinction between traditional insureds and plan claimants was not unconstitutional. *Mohs*, 349 N.W.2d at 586.

In rejecting the claim of unconstitutionality, the *Mohs* court stated in dicta:

> [C]laimants under the assigned claims plan are not really "insureds" as appellant calls them. * * * It is apparent that appellant was in no sense an "insured" and that such a concept is incompatible with her status as a claimant of the bureau.

*Id.* at 585–86.

*Mohs* is distinguishable from the instant case. Initially, the context in which the *Mohs* dicta arises is different from the present case. Neither the constitutionality of the statute nor a plan claimant's [1] ability to receive uninsured/underinsured motorist benefits are at issue in this case. Secondly, and perhaps more importantly, the No–Fault Act has been reorganized since the accident in *Mohs*. The dicta from *Mohs* cited above resulted from combining the definition of "insured" then in effect ("an insured under a plan of reparation security," *see* Minn.Stat. § 65B.43, subd. 5 (1980)), with the statutory provision mandating maintenance of a plan of reparation security. *See* Minn.Stat. § 65B.48, subd. 1 (1980); *see generally Mohs*, 349 N.W.2d at 585–86. *Mohs* did not address the then existing provision regarding "plan of reparation security," *see* Minn.Stat. § 65B.48, subd. 8 (1980), which was in the section specifically dealing with the compulsory nature of reparation security. Indeed, *Mohs* did not have to address that provision in order to reach its conclusion that the assigned claims pool did not unconstitutionally deprive certain drivers of equal protection by not providing pool claimants with uninsured/underinsured motorist benefits. Since the accident in *Mohs*, however, Minn.Stat. § 65B.43, which contains generally applicable definitions of key no-fault terms, *see* Minn.Stat. §§ 65B.43, subd. 1; 65B.41, has been amended to include, and hence make generally applicable, the open-ended definition of a plan of reparation security previously found in the provision addressing the compulsory nature of reparation security plans. *See also* preamble to 1984 Minn.Laws chapter 592 (specifically stating that one of the purposes of the chapter was "defining 'plan of reparation security'"). *See* 1984 Minn.Laws ch. 592, § 62 *codified at* Minn.Stat. § 65B.43, subd. 15 (1984); 1984 Minn.Laws ch. 592, § 94 (repealing Minn.Stat. § 65B.48, subd. 8 (1982)).

---

**1.** Section 65B.63, subd. 2 reads in pertinent part:

> The assignee thereafter has rights and obligations as if the assignee had issued a policy of basic economic loss insurance complying with sections 65B.41 to 65B.71 applicable to the injury *or,* in case of financial inability of a reparation obligor to perform its obligations, as if the assignee had written the applicable reparation insurance * * *.

(Emphasis added.) To the extent that this section may appear to describe two classes of plan claimants, a "plan claimant" for purposes of this opinion is a person other than one assigned to the plan as a result of "financial inability of a reparation obligor to perform its obligations."

Under the version of the No–Fault Act relevant to this case, "insured" continues to be defined as "an insured under a plan of reparation security." Minn.Stat. § 65B.43, subd. 5 (1986). The now generally applicable definition of "plan of reparation security," however, is "a contract, self-insurance, or *other legal means* under which there is an obligation to pay the benefits described in section 65B.49." *Id.,* subd. 15 (emphasis added). Because claims plan claimants do not own traditional insurance contracts and are not self-insured, whether they have a plan of reparation security and hence are insureds under 65B.43 depends on whether they have "other legal means" to provide the coverages described in 65B.49.

Under 65B.43 a plan of reparation security requires the coverages described in 65B.49. That statute in turn describes the following coverages: basic economic loss, Minn.Stat. § 65B.49, subd. 2, residual liability, Minn.Stat. § 65B.49, subd. 3, and uninsured/underinsured motorist coverages, Minn.Stat. § 65B.49, subd. 3a. While the listed coverages initially appear to exceed those available under the plan which provides only basic economic loss benefits, it is critical to note that by their terms the residual liability and uninsured/underinsured coverages cannot apply to the instant case.

> By statute,
> No plan of reparation security may be *renewed, delivered or issued for delivery, or executed* in this state with respect to any motor vehicle registered or principally garaged in this state unless uninsured and underinsured motorist coverages are provided therein.

Minn.Stat. § 65B.49, subd. 3a(1) (emphasis added). Cases involving claims plan claimants will not involve renewal, delivery or

execution of a plan of reparation security. If they did, the claimants would be insureds in the traditional sense of the term and therefore would not be eligible for participation in the claims plan. Similarly,

> Under residual liability insurance the reparation obligor shall be liable to pay, *on behalf of the insured, sums which the insured is legally obligated to pay* as damages because of bodily injury and property damage arising out of the ownership, maintenance or use of a motor vehicle * * *.

Minn.Stat. § 65B.49, subd. 3(2) (emphasis added). Claims plan claimants such as Timothy Baker will have no legal obligation to pay damages as a result of ownership, maintenance or use of a motor vehicle and therefore this case does not implicate this aspect of 65B.49 either. Thus, the only 65B.49 coverage applicable to claims plan claimants is that for basic economic loss benefits. Those benefits are provided by the claims plan. Therefore, the claims plan is a "legal means" for providing the relevant 65B.49 coverage, and qualifies as a "plan of reparation security." Timothy Baker, as a claims plan claimant, has a "plan of reparation security" and is therefore an "insured" under 65B.43.[2]

Finally, we believe our conclusion that Timothy Baker is an insured is consistent with the breadth of the No–Fault Act's policy and intent, *see* Minn.Stat. § 65B.42 (1986), with the specific "gap closing" policy addressed by the claims plan, *see Dahle,* 352 N.W.2d at 399, and with the claims plan's explicit refusal to preclude the participation of minor children. *See* Minn. Stat. § 65B.64, subd. 3 (where a car owner fails to maintain the required insurance "[m]embers of the owner's household *other than minor children* shall * * * be disqualified from benefits through the as-

---

**2.** Since the accident in this case, Minn.Stat. § 65B.49 has been amended to require coverage for certain rented vehicles. *See* Minn.Stat. § 65B.49, subd. 5a (Supp.1989). This amendment, were it applicable to the instant case, would not alter our analysis or conclusion. The required rental vehicle coverage applies where the plan of reparation security insures "a natural person as named insured." For there to be a named insured, there must be a functional in-

suring agreement upon which there is a name. Obviously, this is not the case where the claims plan is involved. Further, the rental coverage comes from the "property damage liability portion of the plan." *See* Minn.Stat. § 65B.49, subd. 5a(a) (Supp.1989). Property damage coverage is a subset of the residual liability coverage, *see* Minn.Stat. § 65B.49, subd. 3(1) (1988), which we have already concluded is not applicable here.

signed claims plan.") (Emphasis added.) This court has a duty to interpret these statutes to effect their manifest policies and intents. *See* Minn.Stat. §§ 645.16–.17 (1986).

## DECISION

American Family is obligated to provide survivor's economic loss benefits and funeral expense benefits through the assigned claims plan.

Affirmed.