Brittany Frost, by her Guardian ad Litem, Michael S. Anderson, and Tina Frost, Plaintiffs-Appellants,

v.

Doreen Whitbeck, Defendant,

American Family Mutual Insurance Company, Defendant-Respondent-Petitioner.

Supreme Court

*No. 01–0327. Oral argument October 7, 2002.—Decided December 17, 2002.*

2002 WI 129

(Also reported in 654 N.W.2d 225.)

For the defendant-respondent-petitioner there were briefs by *Virginia L. Newcomb, Paul F. Graves, Patryk Silver,* and *Borgelt, Powell, Peterson & Frauen, S.C.,* Madison, and oral argument by *Virginia L. Newcomb.*

For plaintiffs-appellants there was a brief by *Michael S. Anderson* and *Axley Brynelson, LLP,* Madison, and oral argument by *Michael S. Anderson.*

¶ 1. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE. This is a review of a published decision of the court of appeals, *Frost v. Whitbeck,* 2001 WI App 289, 249 Wis. 2d 206, 638 N.W.2d 325, reversing the judgment and order of the Circuit Court for Dane County, Richard J. Callaway, Judge.

¶ 2. The circuit court granted summary judgment to American Family Mutual Insurance Co., concluding that Tina Frost and Brittany Frost were excluded from coverage for bodily injury under Doreen Whitbeck's homeowner's policy because Tina Frost is a relative of Ms. Whitbeck and was residing in Doreen Whitbeck's household at the times her daughter, Brittany Frost, suffered bodily injuries.

¶ 3. The court of appeals reversed the judgment and order of the circuit court, concluding that the word "relative" in the policy exclusion was ambiguous and was to be construed against American Family in favor of coverage. We affirm the decision of the court of appeals.

¶ 4. A summary judgment is granted if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.[1] An appellate court reviews a summary judgment applying the same standards and methods used by the circuit court.[2]

---

[1] Wis. Stat. § 802.08(2) (1999–2000). All subsequent references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise indicated.

[2] *Grams v. Boss,* 97 Wis. 2d 332, 338–39, 294 N.W.2d 473 (1980).

¶ 5. At issue in this case is the interpretation of a homeowner's insurance policy. The interpretation of an insurance policy is a question of law when no extrinsic evidence is introduced to interpret the wording of the policy.[3] This court decides questions of law independently of the circuit court and court of appeals, benefiting from the analyses of those courts.[4]

¶ 6. The specific question of law presented in this case is whether Tina Frost, one of the claimants, is a relative of Doreen Whitbeck, the policyholder, within the definition of "insured" so that the claims of Tina Frost and her daughter Brittany seeking damages for bodily injury are barred from coverage under the policy's intra-insured exclusion, sometimes referred to herein as the resident-relative exclusion.[5]

---

[3] *Employers Health Ins. v. Gen. Cas. Co. of Wis.*, 161 Wis. 2d 937, 945–46, 469 N.W.2d 172 (1991).

[4] *Id.* at 946.

[5] American Family argued in its motion for summary judgment that both Tina and Brittany Frost were resident relatives of Doreen Whitbeck and that, as a result, their claims were properly excluded from coverage. It also asserted that the Frosts' claims would be excluded even if only Tina Frost were a resident relative, because any claims by Brittany Frost would then be excluded as she would be a person under the age of 21 in the care of a resident relative. Because both the circuit court and the parties focused on the relationship between Tina Frost and Doreen Whitbeck, we shall do so also. Our conclusions about the word "relative" apply with equal force to the relationship between Brittany Frost and Doreen Whitbeck.

To be excluded from coverage a relative must also be a "resident" of the policyholder's household at the time of injury. The parties dispute the issue of residency, but because we conclude that Tina and Brittany Frost are not relatives of

¶ 7. Applying the oft-repeated, well-accepted rules for construing insurance policies leads us to conclude that Tina Frost is not a relative of Doreen Whitbeck for the purpose of the resident-relative exclusion in Ms. Whitbeck's homeowner's insurance policy. The word "relative" is an indefinite, elastic, intrinsically imprecise word in the context of the exclusion and accordingly should be construed against American Family and in favor of coverage. A reasonable insured would not have understood that Tina Frost, who has a great-great-grandfather as a common ancestor with the policyholder, is a relative within the exclusion. Construing the word "relative" not to include Tina Frost, a third cousin separated by eight degrees of kinship, does not render the resident-relative exclusion meaningless and does not undermine the purpose of this exclusion.

¶ 8. The facts can be stated simply for purposes of this review. Tina Frost and Doreen Whitbeck first met as teenagers. At some point, Doreen Whitbeck's mother told the two women that they were "shirttail relatives."[6] Apparently, Tina Frost and Doreen Whitbeck share the same great-great-grandfather.[7] Tina Frost's great-

Doreen Whitbeck within the policy's definition of "insured," we need not address the issue of whether either or both were residents of Doreen Whitbeck's household.

[6] At times American Family stresses that the subjective awareness of relatedness is relevant to the interpretation of the insurance policy. At other times it asserts that the subjective knowledge of a policyholder is irrelevant. We conclude that the proper question in the present case is whether a reasonable policyholder would consider a third cousin to be a relative under the resident-relative exclusion in a homeowner's insurance policy.

[7] The Frosts argue that the relationship between the Frosts and Ms. Whitbeck was not conclusively established by admis-

sible evidence. In contrast, American Family urges that the evidence of relatedness is competent and undisputed. Because we conclude that the relationship upon which American Family relies is not sufficient to activate the policy exclusion, we need not and do not address the evidentiary issue, and we do not address whether a genuine issue of material fact exists concerning the relationship.

American Family documents Doreen Whitbeck and Tina Frost's family histories to establish their relationship as third cousins. By tracking their respective family trees, American Family intends to show that Doreen Whitbeck and Tina Frost share a common great-great-grandfather whose exact name is unknown. This common great-great-grandfather had sons, Barney Van Ert and John Van Ert, who were brothers. Barney Van Ert was Tina's great-grandfather. The relationship between Tina and Barney Van Ert is as follows: Barney Van Ert's son, George Van Ert, had a daughter, Marie Van Ert (maiden name), who was Tina's mother. John Van Ert was Doreen's great-grandfather. The relationship between Doreen and John Van Ert is as follows: John Van Ert's son, Harold Van Ert, Sr., had a daughter, Theresa Van Ert (maiden name), who was Doreen's mother. Thus, because Tina and Doreen's great-grandfathers were brothers, they share a common great-great-grandfather and are related by eight degrees of kinship. This genealogical exercise simply establishes a single point of relatedness for Tina and Doreen as third cousins.

In its motion for summary judgment, American Family claims that Tina and Doreen are both third and fourth cousins. American Family claims that they are third cousins because they share a common great-great-grandfather. They are also fourth cousins because their mothers were third cousins. *See* Record 34, American Family's Motion for Summary Judgment at 3. Because we conclude that third cousins are not "relatives" as the word is used in the policy, we need not address whether Tina Frost and Doreen Whitbeck are also fourth cousins.

Tina Frost and Doreen Whitbeck are third cousins separated by eight degrees of kinship.[8] Tina Frost's daughter, Brittany Frost, and Doreen Whitbeck are third cousins once removed and separated by nine degrees of kinship.

¶ 9. Tina Frost and Brittany (age 6) came from Kentucky to stay in Doreen Whitbeck's Wisconsin home in May 1996. During the course of their stay, Brittany was allegedly bitten twice by Doreen Whitbeck's dog, once on June 4, 1996, and the second time on November 20, 1996. Brittany suffered injuries on both occasions. Shortly after the second dog bite, both Tina Frost and Brittany left Ms. Whitbeck's home and returned to Kentucky. Three years later, on November 10, 1999, Tina Frost and Brittany filed suit in Wisconsin, naming, as the defendants, Doreen Whitbeck and American Family, her homeowner's insurance company.

¶ 10. American Family moved for summary judgment, arguing that Doreen Whitbeck's homeowner's insurance policy contains an express exclusion of coverage for bodily injury of a resident relative. This review therefore relates to insurance coverage, not to liability for the injuries.

¶ 11. The policy provides several types of coverage. Section I of the policy provides coverage for first-party claims for property loss with some exclusions. Section II of the policy provides coverage for third-party claims with some exclusions. This case involves a Section II exclusion for a claim for bodily injury.

---

[8] According to Wis. Stat. § 990.001(16), they are separated by eight degrees of kinship. The circuit court concluded that Tina Frost and Doreen Whitbeck were separated by ten degrees of kinship.

¶ 12. Specifically, Section II of Ms. Whitbeck's homeowner's insurance policy provides personal liability coverage for compensatory damages for bodily injury for which an insured is legally liable. It provides:

> **We** will pay, up to **our limit,** compensatory damages for which any **insured** is legally liable because of **bodily injury** or **property damage** caused by an **occurrence** covered by this policy.

This section of the policy explicitly excludes coverage for compensatory damages for bodily injury to an insured. The policy states:

> 11. **Intra-insured Suits. We** will not cover **bodily injury** to any **insured.**

The policy defines an insured to include a relative who resides in the policyholder's household. The policy reads:

> 5. **Insured**
>
> > a. **Insured** means **you** and, if residents of your household:
> >
> > > (1) **your** relatives; and
> > >
> > > (2) any other person under the age of 21 in **your** care or in the care of **your** resident relatives.

¶ 13. The question of law presented is whether Tina Frost, one of the claimants, is a relative of Doreen Whitbeck, the policyholder, within the definition of an insured in the policy so that the claims of Tina Frost and her daughter Brittany seeking damages for bodily injury are barred from coverage under the policy's resident-relative exclusion.

¶ 14. The court has set forth, in numerous cases, overlapping rules for interpreting an insurance policy. These rules of interpretation are as follows:

¶ 15. Words and phrases in insurance contracts are subject to the same rules of construction that apply to contracts generally.[9]

¶ 16. The primary objective in interpreting and construing a contract is to ascertain and carry out the true intent of the parties.[10]

¶ 17. If the language of an insurance policy is unambiguous, a court will not rewrite the policy by construction[11] and will interpret the policy according to its plain and ordinary meaning to avoid imposing contract obligations that the parties did not undertake.[12]

¶ 18. On the other hand, the language of an insurance policy may be ambiguous. Words and phrases in an insurance policy are ambiguous when they are so imprecise and elastic as to lack any certain interpreta-

---

[9] *Peace v. N.W. Nat'l Ins. Co.*, 228 Wis. 2d 106, 120, 596 N.W.2d 429 (1999); *Kremers-Urban Co. v. Am. Employers Ins.*, 119 Wis. 2d 722, 735, 351 N.W.2d 156 (1984).

For commentary on these various rules of construction, see 2 Lee R. Russ & Thomas S. Segalla, *Couch on Insurance* ch. 22 (3d ed. 1999 & Supp. 2002).

[10] *Mau v. N.D. Ins. Reserve Fund*, 2001 WI 134, ¶ 13, 248 Wis. 2d 1031, 637 N.W.2d 45; *Peace,* 228 Wis. 2d at 120; *Kremers-Urban Co.,* 119 Wis. 2d at 735.

[11] *Smith v. Atl. Mut. Ins. Co.*, 155 Wis. 2d 808, 811, 456 N.W.2d 597 (1990).

[12] *Danbeck v. Am. Family Mut. Ins. Co.*, 2001 WI 91, ¶ 10, 245 Wis. 2d 186, 629 N.W.2d 150.

tion[13] or are susceptible to more than one reasonable construction.[14] Terms of an insurance policy may be inherently ambiguous or may be ambiguous when considered in the context of the insurance policy as a whole.[15] Whether ambiguity exists in an insurance policy is a question of law.[16]

¶ 19. If terms in an insurance policy are ambiguous, they should be construed against the insurance company that drafted the policy. Thus, ambiguous terms are to be construed in favor of coverage,[17] and exclusions are to be narrowly construed against an insurer.[18]

¶ 20. Language in an insurance policy is construed as understood by a reasonable person in the position of an insured rather than as intended by the insurer.[19] The reasonable expectations of coverage of an insured should be furthered by the interpretation given.[20]

---

[13] *Peace,* 228 Wis. 2d at 121 (ambiguity described as "an 'intrinsically imprecise or uncertain' term" (citation omitted)).

[14] *Danbeck,* 245 Wis. 2d 186, ¶ 10.

[15] *Badger Mut. Ins. Co. v. Schmitz,* 2002 WI 98, ¶ 61, 255 Wis. 2d 61, 647 N.W.2d 223.

[16] *Mau,* 248 Wis. 2d 1031, ¶ 13.

[17] *Danbeck,* 245 Wis. 2d 186, ¶ 10.

[18] *Peace,* 228 Wis. 2d at 121, 132; *Whirlpool v. Ziebert,* 197 Wis. 2d 144, 152, 539 N.W.2d 883 (1995).

[19] *Kremers-Urban Co.,* 119 Wis. 2d at 735.

[20] *Id.*

¶ 21. A construction of an insurance policy that gives reasonable meaning to every provision of the policy is preferable to one leaving part of the language useless or meaningless.[21]

¶ 22. Furthermore, in construing an insurance policy as it is understood by a reasonable person in the position of the insured, a court may consider the purpose or subject matter of the insurance, the situation of the parties, and the circumstances surrounding the making of the contract.[22]

¶ 23. With these rules in mind, we examine the meaning of the word "relative" in the intra-insured policy exclusion to determine whether Tina Frost is a relative of Ms. Whitbeck so that the Frosts' claims are excluded from coverage.

¶ 24. American Family urges this court to begin and end its inquiry with the rule of construction that when the language of an insurance policy is unambiguous, a court will interpret the policy according to its plain and ordinary meaning to avoid imposing contract obligations that the parties did not undertake. American Family argued in the court of appeals and in its brief in the present court that the word "relative" is unambiguous and that the plain and ordinary meaning

[21] *Stanhope v. Brown County,* 90 Wis. 2d 823, 848–49, 280 N.W.2d 711 (1979); *Inter-Ins. Ex. v. Westchester Fire Ins. Co.,* 25 Wis. 2d 100, 106, 130 N.W.2d 185 (1964).

[22] *Employers Health Ins. v. Gen. Cas. Co. of Wis.,* 161 Wis. 2d 937, 946, 469 N.W.2d 172 (1991).

of the word is, at minimum, "a person related to another by blood ... no matter how distant or remote the connection."[23]

¶ 25. American Family contends that its position is supported by Wisconsin case law, relying on *In re Estate of Haese*, 80 Wis. 2d 285, 259 N.W.2d 54 (1977), and *Peabody v. American Family Mutual Insurance Co.*, 220 Wis. 2d 340, 582 N.W.2d 753 (Ct. App. 1998). Neither case, however, supports American Family's position.

¶ 26. The court in *Haese* decided whether a non-blood nephew of the testator's deceased husband was a "relative of the testator" as that phrase appeared in the anti-lapse statute.[24] The *Haese* court concluded that "there is general agreement that a relative is one connected by blood or affinity,"[25] but that "the term [relative] is ambiguous."[26] After examining various indices of legislative intent, the *Haese* court concluded that the word "relative" in the anti-lapse statute was restricted to persons bound by blood.[27]

---

[23] Brief of Defendant-Respondent-Petitioner at 25–26. At oral argument American Family recognized that the word "relative" in the policy did not necessarily include very remote blood kin. In fact, it conceded that there must be some limit. American Family did not, however, describe what degree of kinship fell outside the word "relative," although American Family also stated that a limit could be determined by asking whether a reasonable person in the position of the insured would know that he or she was related to the person in question.

[24] *In re Estate of Haese*, 80 Wis. 2d 285, 288, 259 N.W.2d 54 (1977).

[25] *Id.* at 291.

[26] *Id.*

[27] *Id.* at 298.

¶ 27. The *Haese* decision can be read to support American Family's argument that the word "relative" can be interpreted in the context of the anti-lapse statute to mean persons connected by blood. The *Haese* case does not, however, support American Family's position that the word "relative" plainly and unambiguously includes any and all persons connected by blood. The nephew in question in the *Haese* decision was not connected by blood to the testator, and the court did not have to decide the issue presented in this case, namely, how close must blood kin be to fall within the meaning of "relative" for purposes of this insurance policy.

¶ 28. In the *Peabody* case, the injured party attempted to get underinsured motorist coverage as a relative under her father's insurance policy. The policy defined "relative" as a "person living in your household, related to you by blood, marriage or adoption. This includes a ward or foster child. It does not include any person who or whose spouse owns a motor vehicle."[28] As in *Haese,* the court in *Peabody* did not have to decide whether "relative" plainly and unambiguously includes all persons connected by blood. The *Peabody* court merely concluded that because the daughter owned her own vehicle she was not a relative as defined by her father's policy and was therefore not covered under his policy. *Peabody* is inapposite and is not relevant to the issue raised in this case.

¶ 29. American Family cites cases from other jurisdictions in an attempt to support its interpretation of the word "relative." None of the cases cited stands for the broad proposition urged by American Family, namely, that the word "relative" refers to all persons

---

[28] *Peabody v. Am. Family Mut. Ins. Co.,* 220 Wis. 2d 340, 346, 582 N.W.2d 753 (Ct. App. 1998).

related by blood no matter how distant or remote the connection. The courts generally concluded that "relative" means a person connected by blood, marriage, or adoption. They then determined whether the person at issue is or is not a relative, depending on the language of the policy, the nature of the relation, and the purpose of the policy provision.[29]

¶ 30. Four cases cited by American Family concluded that the word "relative" is unambiguous. One of these cases simply concluded that "relative" as defined by the policy clearly and unambiguously did not include domestic partners.[30] In each of the other three cases, the court addressed the issue of whether the word "relative" includes relationships by affinity, clearly not the issue in our case. Furthermore, in each of these

---

[29] *See, e.g., Vernatter v. Allstate Ins. Co.,* 362 F.2d 403 (4th Cir. 1966)(uncle-in-law); *Fid. & Cas. Co. of N.Y. v. Jackson,* 297 F.2d 230 (4th Cir. 1961)(mother-in-law); *Ala. Farm Bureau Mut. Cas. Co. v. Pigott,* 393 So. 2d 1379 (Ala. 1981)(unborn child); *Groves v. State Farm Life & Cas. Co.,* 829 P.2d 1237 (Ariz. Ct. App. 1992)(former son-in-law); *Aji v. Allstate Ins. Co.,* 416 So. 2d 1225 (Fla. Dist. Ct. App. 1982)(brother-in-law); *Young v. State Farm Mut. Auto Ins. Co.,* 697 P.2d 40 (Haw. 1985)(son of the policyholder's paramour); *Hernandez v. Comco Ins. Co.,* 357 So. 2d 1368 (La. Ct. App. 1978)(son-in-law); *Liprie v. Mich. Millers Mut. Ins. Co.,* 143 So. 2d 597 (La. Ct. App. 1962)(daughter-in-law); *Mickelson v. Am. Family Mut. Ins. Co.,* 329 N.W.2d 814 (Minn. 1983)(domestic partner); *Pruitt v. Farmers Ins. Co.,* 950 S.W.2d 659 (Mo. Ct. App. 1997)(nephew); *Hayes v. Am. Standard Ins. Co.,* 847 S.W.2d 150 (Mo. Ct. App. 1993) (daughter of policyholder's deceased paramour); *Sjogren v. Metro. Prop. & Cas. Ins. Co.,* 703 A.2d 608, 612 (R.I. 1997)(former step-son).

[30] *Mickelson v. Am. Family Mut. Ins. Co.,* 329 N.W.2d 814 (Minn. 1983).

three cases the relationship involved appears much closer than the one in the present case.[31]

¶ 31. Contrary to the arguments of American Family we conclude that the word "relative" in the policy exclusion is ambiguous. Our rules of construction state that words in an insurance policy are ambiguous when they are so imprecise and elastic as to lack any certain interpretation.[32] Courts have described the word "relative" as one of "flexible meaning"[33] and as a word with "inherent ambiguities."[34] The word has also been described as susceptible to more than one meaning.[35] Courts have stated that because there is no

---

[31] *Vernatter v. Allstate Ins. Co.*, 362 F.2d 403, 404 (4th Cir. 1966)(uncle-in-law); *Fid. & Cas. Co. of N.Y. v. Jackson*, 297 F.2d 230, 231–32 (4th Cir. 1961)(mother-in-law); *Liprie v. Mich. Millers Mut. Ins. Co.*, 143 So. 2d 597 (La. Ct. App. 1962)(daughter-in-law).

[32] *Peace*, 228 Wis. 2d at 121. According to the dissent, the word "relative" is unambiguous. Nevertheless, the dissent defines "relative" by adding the following words to the policy: Relative "includes *at least* those who are related by blood and consider themselves to be relatives." Dissent, ¶ 59. None of the rules of construction of insurance policies, however, support a court's rewriting a policy (ambiguous or unambiguous) in this way.

[33] *Cooney v. Cooper*, 143 F.2d 312, 314 (8th Cir. 1944).

[34] *Sjogren*, 703 A.2d at 612. *See also Ind. Lumbermens Mut. Ins. Co. v. Passalacqua*, 211 N.Y.S.2d 62, 65–66 (Sup. Ct. Eq. 1961).

[35] *See, e.g., McGuiness v. Motor Vehicle Accident Indemnification Corp.*, 231 N.Y.S.2d 795, 797 (Sup. Ct. 1962); *Ind. Lumbermens Mut. Ins. Co.*, 211 N.Y.S.2d at 65; *Sjogren*, 703 A.2d at 612; *Forner v. Butler*, 460 S.E.2d 425, 427 (S.C. Ct. App. 1995).

single, precise definition of "relative," the word must be interpreted in the context in which it is employed.[36]

¶ 32. We agree with American Family that "relative" means, at a minimum, a person related to another by blood and that numerous cases so state. We also accept that dictionaries define the word "relative" to include a person related by blood. But neither a dictionary definition nor case law resolves the word's elasticity in the case before us. A dictionary definition alone does not mean that the word is precise, definite, and inelastic. Moreover, the issue before us is not whether "relative" means a person related to another by blood but rather whether "relative" means, as American Family asserts, every person related to another by blood, no matter how distant or remote the connection, in the context of this policy.

¶ 33. Justice Ann Walsh Bradley asked at oral argument: How far does the policy require us to trace our ancestors to determine who our relatives are? If we accept Adam and Eve, she continued, aren't we all relatives under American Family's definition? Counsel for American Family replied, "one has certainly to draw the line." This exchange clearly illustrates that the word "relative" is elastic and that some limits need to be established in order to give the word meaning.[37] Ameri-

---

[36] *Cooney,* 143 F.2d at 314 ("relative" must be interpreted within the context in which it is employed and with regard to the contract within which it appears); *Ind. Lumbermens Mut. Ins. Co.,* 211 N.Y.S.2d at 65 (same); *Forner,* 460 S.E.2d at 427 (same).

[37] In discussing the potential unlimited nature of the scope of the word "relative" and the intra-insured exclusion as defined by American Family, the Frosts refer to an ABC News segment from April 21, 2000, which reported that all Europeans are descended from seven matriarchal groups. Each of these maternal clans, referred to as the Seven Daughters of Eve, has

can Family could have defined the word "relative" in the policy, but it did not.

¶ 34. The dissent agrees that the term "relative" may be ambiguous because it does not include all persons related by blood no matter how distant or remote the connection. It simply argues that we need not find the outer limits of consanguinity in this case because Tina Frost and Doreen Whitbeck "knew of and acknowledge their blood connection." Dissent, ¶ 48. According to the dissent, "the definition of the term 'relative' as used in this policy includes *at least* those who are related by blood and consider themselves to be relatives." Dissent, ¶ 59. None of the rules of construction for insurance policies, however, permit ambiguity to be written out of an insurance policy by the addition of a qualifying term such as "known."

¶ 35. The plain meaning rule of construction does not apply in the present case because the word "relative" in the context of the policy exclusion is so imprecise and elastic as to lack a certain interpretation. The insurance policy leaves open the degree of consanguinity required to be included as a relative, and therefore the word must be construed by a court.

¶ 36. Adhering to the rules of construction for interpreting language in a policy leads to the conclusion that the imprecise, elastic, indefinite word "relative" should be construed against American Family and in

---

sprouted millions of individuals. In addition, all seven of the genetic groups appear to be descended from the "Lara" clan, one of three clans that still exist in Africa today. This research tends to support the claim that all humans share a common African ancestor. *See* R. 37, Brief in Opposition to Defendant American Family's Motion for Summary Judgment at 16–17.

favor of the policyholder and coverage.[38] This conclusion about the word "relative" is consistent with case law in other jurisdictions. The word "relative" has been viewed as ambiguous and has been narrowly construed when the policy excludes a relative and has been broadly construed when the policy extends coverage to a relative.[39]

¶ 37. Another rule of construction for interpreting language in a policy is that a policy is to be construed as understood by a reasonable person in the position of the policyholder.[40] As noted by the court of appeals, the "degree of consanguinity or affinity must be such that a reasonable policyholder would understand that co-habitation would reduce the coverage available to her if she were held liable for bodily injury to that relative."[41]

¶ 38. A reasonable policyholder would not understand the word "relative" in this policy exclusion to include any person related by blood no matter how remote the relationship. If "relative" embodies all persons having a blood relationship to the insured, the effect is to enlarge the exclusion in this policy to extend to persons only barely and remotely touching the policyholder.

¶ 39. Moreover, American Family's combined use of "resident of your household" and "relative" to exclude persons from coverage increases the likelihood that a

---

[38] *Danbeck,* 245 Wis. 2d at 193; *Peace,* 228 Wis. 2d at 132.

[39] *See, e.g., McGuiness,* 231 N.Y.S.2d at 797; *Ind. Lumbermens Mut. Ins. Co.,* 211 N.Y.S.2d at 66; *Forner,* 460 S.E.2d at 427. See also ¶ 19, *supra.*

[40] *Kremers-Urban Co.,* 119 Wis. 2d at 735.

[41] *Frost v. Whitbeck,* 2001 WI App 289, ¶ 13, 249 Wis. 2d 206, 638 N.W.2d 325.

reasonable insured would interpret the word "relative" to refer only to close family members, in terms of degrees of kinship. We conclude that a reasonable person in the position of Doreen Whitbeck would not understand the word "relative" to include persons separated by eight degrees of kinship. Thus, a holding that Tina Frost is not a relative within the policy exclusion is consistent with the understanding of a reasonable person in the position of a policyholder and comports with the reasonable expectation of the policyholder.

¶ 40. Arguing for the application of a different rule of construction, American Family contends that a holding that Tina Frost is not a relative does not give reasonable meaning to every provision of the policy and leaves the language of the exclusion useless and meaningless. We agree with American Family to the extent that it argues that our rules of construction of insurance policies require that a court not adopt a construction of a policy that entirely neutralizes one provision if the contract is susceptible to another construction that gives effect to all of its provisions and is consistent with the general intent of the parties.[42]

¶ 41. We are not, however, construing "relative" so as to render the resident-relative exclusion meaningless. We are simply delineating some boundary to the otherwise limitless meaning of "relative."

¶ 42. We need not define in the present case what degree of consanguinity is required by the word "relative" as used in the intra-insured exclusion. We need determine only whether the word "relative" in the context of this policy exclusion extends as far as persons having a great-great-grandfather as a common ancestor.

---

[42] *Stanhope,* 90 Wis. 2d at 849.

¶ 43. The word "relative" encompasses a continuum of possible interpretations, a continuum of degrees of consanguinity. To hold that "relative," within the context of an insurance policy exclusion, does not include third cousins does not strip the resident-relative exclusion of all meaning. It simply limits the scope of the exclusion.

¶ 44. American Family further urges that in construing the word "relative" we should, as the rules of construction teach, consider the purpose of the exclusion. American Family contends that the purpose of an exclusion helps inform our interpretation of a policy as it is understood by a reasonable person in the position of an insured and that the purpose of the exclusion in the present policy leads to holding that Tina Frost is a relative of Doreen Whitbeck under the policy.

¶ 45. We agree with American Family that the purpose of an exclusion assists a court in interpreting the policy. We further agree with American Family that the purpose of the exclusion in issue here is to exempt an insurance company from liability to those persons to whom a policyholder, on account of close family ties, would be likely to show partiality in case of injury.[43] Construing "relative" to exclude blood relations who are separated by eight degrees of kinship does not, however, defeat this purpose. Indeed, such a construction of the word "relative" is consistent with the goal of excluding

---

[43] The resident-relative exclusion is designed and intended to protect an insurance company from exposure to liability "to those persons to whom the insured, on account of close family ties, would be apt to be partial in case of injury." *Shannon v. Shannon,* 150 Wis. 2d 434, 456, 442 N.W.2d 25 (1989)(quoting *A.G. v. Travelers Ins. Co.,* 112 Wis. 2d 18, 20–21, 331 N.W.2d 643 (Ct. App. 1983)).

only those family members who presumptively would be inclined to collude on claims.

¶ 46. In sum, applying the oft-repeated, well-accepted rules for construing insurance policies leads us to conclude that Tina Frost is not a relative of Doreen Whitbeck for the purpose of the resident-relative exclusion in Ms. Whitbeck's homeowner's insurance policy. The word "relative" is an indefinite, elastic, intrinsically imprecise word in the context of the exclusion and accordingly should be construed against American Family and in favor of coverage. A reasonable insured would not have understood that Tina Frost, who has a great-great-grandfather as a common ancestor with the policyholder, is a relative within the exclusion. Construing the word "relative" not to include Tina Frost, a third cousin separated by eight degrees of kinship, does not render the resident-relative exclusion meaningless and does not undermine the purpose of this exclusion.

¶ 47. Accordingly, the decision of the court of appeals is affirmed, and we remand the cause to the circuit court for further proceedings.

*By the Court.* The decision of the court of appeals is affirmed.

¶ 48. JON P. WILCOX, J. *(dissenting).* I agree with the majority's statement of the methodology to be used in interpreting the language of an insurance policy. *See* majority op., ¶¶ 14–22. However, I do not agree with the majority's application of the rules of interpretation to the facts here, nor do I agree with the ultimate decision of the court to affirm the court of appeals. I would find that under the well-established rules of insurance policy interpretation, the term "relative" is unambiguous in this case, where Frost and Whitbeck knew of and acknowledged their blood con-

nection. I would further hold that a reasonable person in the position of the policyholder would understand the word "relative" in the policy exclusion to cover such a blood relation. Finally, I would hold that the record in this case supports the conclusion that, as a matter of law, the Frosts were residents of Whitbeck's household. Thus, I would reverse the decision of the court of appeals and grant summary judgment in favor of American Family. For these reasons, I respectfully dissent.

¶ 49. The majority holds that the word "relative" is ambiguous, concluding that it is "an indefinite, elastic, intrinsically imprecise word in the context of the exclusion . . . ." Majority op., ¶ 7. I disagree. The majority states: "Words and phrases in an insurance policy are ambiguous when they are so imprecise and elastic as to lack any certain interpretation or are susceptible to more than one reasonable construction." Majority op., ¶ 18 (citations omitted). While I concede that there are circumstances where the inclusion of a person under the term "relative" might be unreasonable, this is not such a case. The term "relative" has a certain interpretation that should apply in this case.

¶ 50. When interpreting an insurance policy, we are to give the policy terms their plain and ordinary meaning in order to avoid imposing contract obligations upon the parties that they did not undertake. *Danbeck v. Am. Family Mut. Ins. Co.*, 2001 WI 91, ¶ 10, 245 Wis. 2d 186, 629 N.W.2d 150 (internal citations omitted). We may discern the plain and ordinary meaning of an insurance policy term by "seek[ing] guidance from a recognized dictionary." *Smith v. Katz*, 218 Wis. 2d 442, 451 n.4, 578 N.W.2d 202 (1998). "Relative" is defined in the *American Heritage Dictionary* as, "One related by kinship, common origin, or marriage." *American Heri-*

*tage Dictionary* 1523 (3d ed. 1992). Similarly, "kinship" is defined as a "[c]onnection by blood, marriage, or adoption; family relationship" or a "[r]elationship by nature or character; affinity." *Id.* at 993. American Family asserts that this dictionary definition supports the argument that "relative" is unambiguous, because there is agreement that it means, at minimum, "connected by blood." The majority accepts this definition, but finds that the real issue is whether the definition extends to all blood relatives "no matter how distant or remote the connection." Majority op., ¶ 32.

¶ 51. I agree with the majority that blood relations cannot and should not be interpreted to trace back all the way to the beginning of the human race, but this case does not call for such an interpretation. Here, we have two people that are third cousins, related by blood, who know and acknowledge that they are related.[1] When people are related by blood and recognize each other as a "cousin," they are, by definition, relatives.

¶ 52. Contrary to the majority, I do not believe that this court has to find that the term " 'relative' refers to all persons related by blood no matter how distant or remote the connection," majority op., ¶ 29, in order to find that Frost and Whitbeck are relatives under this policy. At some point, the blood connection becomes too tenuous for parties to even be aware they are related. At such a point, it is unreasonable to find a relative relationship. However, those circumstances do not exist in this case. Here, Frost and Whitbeck were blood related and they knew it. The existence of the blood connection under circumstances where those

---

[1] Frost has argued that there is no competent evidence to support a finding of relative status. However, I find that the hospital records and testimony by Whitbeck and Frost are sufficient and admissible evidence of the relationship.

involved are aware of the connection and refer to each other as "cousins" is sufficient to make them relatives under the plain language of this insurance policy, particularly in light of the additional "resident" limitation on the exclusion.

¶ 53. The majority acknowledges that Tina Frost and Doreen Whitbeck are related by blood, repeatedly stating that they are third cousins separated by eight degrees of kinship. *See* majority op., ¶¶ 7, 8, 39. Whitbeck and Frost knew they shared a great-great-grandfather and that their great-grandfathers were brothers. Indeed, hospital records from Brittany's June 1996 emergency room visit indicate that Brittany was "living" with her "mother's cousin," having "recently moved . . . from Kentucky." They held out to the world that they were relatives.

¶ 54. One Wisconsin case examined by the majority is *In re Estate of Haese,* 80 Wis. 2d 285, 259 N.W.2d 54 (1977).[2] We held in *Haese* that the term "relative" was ambiguous in the context of the anti-lapse statute as it pertains to a non-blood relative. The majority asserts that *Haese* is rendered useless to our analysis because it did not hold that the word " 'relative' plainly and unambiguously includes any and all persons connected by blood." Majority op., ¶ 27. While we held that the statute required a narrow interpretation limited to blood relatives, we noted that "there is general agreement that a relative is one connected by blood or affinity." *Haese,* 80 Wis. 2d at 291. Further, we found

---

[2] The other Wisconsin case cited by the majority is *Peabody v. Am. Family Mut. Ins. Co.,* 220 Wis. 2d 340, 582 N.W.2d 753 (Ct. App. 1998). The majority asserts, and I agree, that the case is inapposite because the policy in the case specifically excluded those persons who owned their own vehicle. *See* majority op., ¶ 28.

that although the term was ambiguous in the context of the case, the term in other cases was unambiguous and "susceptible to interpretation by common and ordinary meaning." *Id.* at 296.

¶ 55. The majority also suggests that the cases from other jurisdictions are of little or no use in the present case because, among the cases that hold "relative" to be unambiguous, one held that "relative" clearly did not include domestic partners, and the others dealt with affinity relationships. Majority op., ¶¶ 29–30.

¶ 56. The majority is correct that none of these cases involve a blood relationship like the one in this case. I disagree, however, that these cases are of no use to our analysis. These cases show that the word relative can be construed broadly and, under the common definition, extend *unambiguously* to a variety of non-blood relatives. In *Liprie,* for example, a Louisiana court found that the "usual, customary and generally accepted interpretation of the word 'relative' " included those related by blood or affinity, and a daughter-in-law of an insured was an insured under the relevant policy. *Liprie v. Mich. Millers Mut. Ins. Co.,* 143 So.2d 597, 600–01 (La. Ct. App. 1962).

¶ 57. In *Mickelson,* the Supreme Court of Minnesota found that the word "relative" was a "term[] of common usage and generally accepted meaning" and means "one connected by blood or marriage." *Mickelson v. Am. Family Mut. Ins. Co.,* 329 N.W.2d 814, 816 (Minn. 1983). That court concluded a domestic partner was not a relative under the policy because there was no relationship by blood or marriage. *Id.*

¶ 58. A common thread binds all the cases cited by the majority.[3] Even where a court has found the term

---

[3] For a full list of these cases, see majority op. ¶ 29, n.29.

ambiguous within the context of a case, the court has acknowledged that the definition of a "relative" includes those related by blood. The majority fails to cite a single case in which a court has found that a person related by blood to another is not a relative.[4] That portion of the definition of "relative" is clear and unambiguous.

¶ 59. There may be a case where, as in the *Haese* case, this court must find ambiguity, but this is not such a case. The definition of the term "relative" as used in this policy includes *at least* those who are related by blood and consider themselves to be relatives. Any ambiguity with the term "relative" would arise when people do not know they are related by blood or where there is a non-blood relationship, not under facts such as those presented by this case.

¶ 60. In *Maca,* this court called "resident" an "elastic" term. *See Nat'l Farmers Union Prop. & Cas. Co. v. Maca,* 26 Wis. 2d 399, 407–08, 132 N.W.2d 517 (1965). In another case, though, this court found that "resident" was unambiguous as used in automobile liability insurance policies and should be "construed in light of [its] plain and common meaning." *Pamperin v. Milwaukee Mut. Ins. Co.,* 55 Wis. 2d 27, 37, 197 N.W.2d 783 (1972). I am of the opinion that the term "relative" should be interpreted in the same manner.

¶ 61. I now turn to the issue of whether a reasonable person in the position of the policyholder would understand a third cousin to be included by use of the term "relative" in a homeowner's insurance policy. The majority holds that a reasonable person would not have such an understanding. I disagree. Frost and Whitbeck were more than just good friends. They were blood

_____

[4] Again, the majority notes *Peabody,* 220 Wis. 2d 340, but finds the case inapposite.

relatives and they recognized that fact. As such, it would be reasonable for Whitbeck to consider Tina and Brittany in dealing with insurance issues. The majority finds that a reasonable person would only consider close kin under the policy exclusion. I see no reason why a person would only consider a "close" relative to be included in the exclusion. Also, I find the additional "resident" requirement makes this a narrow exception, one that applies only to relatives with whom the policyholder feels close enough to share a home. If blood relatives are close enough to share a home, they are close enough to consider the implications of that arrangement for insurance purposes.

¶ 62. While few may be in the situation to have a close relationship with a third cousin, Frost and Whitbeck were. It may be more common for a person to have a son or daughter, parent or sibling living in one's home, but a reasonable person would recognize that use of the term "relative" is broader and expands beyond those categories of people in absence of specific limiting language. The very use of the term "relative" in the policy defies a narrow understanding. The majority finds that excluding third cousins does not defeat the purpose of the exclusion. Again I disagree. By finding that acknowledged cousins do not fit the policy exclusion, the majority draws an arbitrary line regarding who might and who might not collude in the face of a definition that unambiguously includes blood relatives.

¶ 63. The purpose of this policy exclusion is to prevent collusion; it is designed to "exempt an insurance company from liability to those persons to whom a policyholder, on account of close family ties, would be likely to show partiality in case of injury." Majority op., ¶ 45 (citing *Shannon v. Shannon*, 150 Wis. 2d 434, 456, 442 N.W.2d 25 (1989)). Given that Frost and Whitbeck

were "good friends" and third cousins by blood, there is no reason to believe the risk of collusion here is less than with other family situations. This court has noted that the probability of collusion in a particular case need not be high for exclusion language to apply. *See Whirlpool Corp. v. Ziebert,* 197 Wis. 2d 144, 151, 539 N.W.2d 883 (1995) (finding that although the possibility of collusion in the case seemed "quite low, if not nil" the policy still applied). Although Frost and Whitbeck are separated by eight degrees of kinship, they are connected by blood. If Whitbeck felt close enough to Frost to allow her to be a resident of her home, there is no reason why Whitbeck would not consider her third cousin like other relatives in dealing with insurance issues.

¶ 64. In *Fidelity and Casualty Co. of New York v. Jackson,* 297 F.2d 230, 232 (4th Cir. 1961), one of the parties argued that interpreting "relative" to include those related to an insured by marriage would so "enlarge the exemption as to include car owners only barely and remotely touching the insured through affinity." The majority suggests a similar problem arises here. *See* majority op., ¶ 38. However, the Fourth Circuit found that "the latitude of the stipulation is severely straitened by the further requirement that the 'relative' be a 'resident of the same household' as the insured." *Jackson,* 297 F.2d at 232. As I have suggested, the category of people that will be both relatives and residents is very narrow. If, as I assert occurred here, third cousins choose to reside together, knowing that they are related, there is no reason why that relationship should not be considered for insurance purposes.

¶ 65. In *Vernatter v. Allstate Insurance Co.,* 362 F.2d 403 (4th Cir. 1966), the court found that although an uncle-in-law is not as closely related as the mother-

in-law in *Jackson,* for purposes of automobile liability insurance, the degree of relationship did not matter. The purpose was to exclude all relatives by blood or marriage, "whose car would be readily available to the insured by reason of their common residence and their familial relationship." *Id.* at 406. The same reasoning applies to the homeowner's insurance policy exclusion, where the purpose of the exclusion is to avoid liability where collusion is likely. Frost argues that close friends create the same risks; however, the argument that the exclusion could be broader does not require that the policy limits, as written, should not apply.

¶ 66. Since I would hold that Frost and Whitbeck are relatives, I turn to the "resident" portion of the resident-relative policy exclusion. I would find that the Frosts were residents of Whitbeck's household. Since the majority decided only the relative issue, some additional facts are necessary.

¶ 67. When Tina divorced, she was given sole custody of her six-year-old daughter Brittany. In May 1996 Tina and Brittany Frost came to stay at Doreen Whitbeck's home in Mt. Horeb, Wisconsin. Tina rented a trailer for the trip. In addition to clothes, toys, and Brittany's bike, Tina brought several large items with her, including a bed, a clothes dryer, and a television.

¶ 68. Shortly after moving into Whitbeck's home, Tina obtained full-time employment as a nursing assistant at Ingleside Nursing Home. In July 1996 Tina turned in her Kentucky license and obtained a Wisconsin driver's license. She also sold her truck and leased a car that she registered in Wisconsin. Tina received mail at the Whitbeck residence. She used the Mt. Horeb address for her driver's license, car insurance, employment application, and various medical records. Before moving from Kentucky, Tina closed out her savings

110

account in Kentucky. She opened a bank account and used her Wisconsin address for her checkbook. Tina paid Wisconsin taxes in 1996.

¶ 69. Whitbeck paid all of the rent while the Frosts stayed with her, but Tina paid other bills, including water and utilities. Tina and Brittany had full use of the home and no limitations were placed upon the length of their stay.

¶ 70. Tina usually worked from 11:00 p.m. until 7:00 a.m. Whitbeck worked from 8:00 a.m. until 5:00 p.m. Brittany stayed at home with Whitbeck while her mother was at work. No babysitters were used. Tina and Brittany did not often eat with Whitbeck; rather, they typically ate fast food.

¶ 71. Tina kept in contact with Brittany's father and other family members in Kentucky. She told them she wanted to return and would return when she had the money. She also told Whitbeck that she wanted to return to Kentucky.

¶ 72. After the first dog bite, Brittany went to stay with her father in Kentucky for approximately one month. She returned to Mt. Horeb in time to begin school in August. After the second dog bite in November, Brittany returned to Kentucky permanently. Tina moved back to Kentucky in December 1996.

¶ 73. Under *Pamperin,* 55 Wis. 2d at 33–34, 36–37, this court has held that three factors should be considered in determining if one is a resident of a household: 1) whether the individuals were living under the same roof; 2) in a close, intimate and informal relationship and not at arm's length; and 3) where the intended duration is substantial, consistent with the informality of the relationship, and " 'long enough so that it is reasonable to expect the parties to take the relationship into consideration in contracting about

111

such matters as insurance or in their conduct in reliance thereon.'" *Id.* at 34. The court in *Pamperin* went on to note that the intended duration of the stay need not have the permanency of a legal domicile, but the stay must be more than a "mere temporary sojourn." *Id.* at 35. No one factor is controlling; rather, "all of the elements must combine to a greater or lesser degree in order to establish the relationship." *Id.* at 37.

¶ 74. Tina argues that there are material issues of fact that remain regarding whether she or Brittany were residents of Whitbeck's household, thereby making summary judgment inappropriate. However, I agree with the circuit court's finding that the only dispute relates to the location where Tina and Brittany slept in the household, and that this issue is immaterial to the resident question. Determining residency is, by its nature, a fact specific analysis. *See Ross v. Martini,* 204 Wis. 2d 354, 358, 555 N.W.2d 381 (Ct. App. 1996). However, Wisconsin courts have held that residency can be determined as a matter of law. *See Pamperin,* 55 Wis. 2d at 38–39; *Maca,* 26 Wis. 2d at 408; *Ross,* 204 Wis. 2d at 360; *A.G. v. Travelers Ins. Co.,* 112 Wis. 2d 18, 24–25, 331 N.W.2d 643 (Ct. App. 1983).

¶ 75. In *Pamperin,* this court reversed a circuit court ruling, finding that a directed verdict was appropriate on the issue of residency. 55 Wis. 2d at 39. There, a niece of the insured was involved in an accident. *Id.* at 32, 37. This court held that she was not a resident of her uncle's home, because she kept only a few clothes there and transferred none of her possessions, she did not reside continuously at the home, and early termination of the arrangement was likely. *Id.* at 37–38.

¶ 76. In *Maca,* on the other hand, this court held that an adult son was a resident of his parents' home. *Maca,* 26 Wis. 2d at 406–08. In that case, the son

brought his possessions to his parents' home, lived only on their farm for five months, did not pay rent but was paid for work done on the farm, used the family car, and sometimes ate at the home. Even though both he and his father considered the stay temporary, and he actively sought work that would require him to move, this court found that he was a resident. *Id.* at 408.

¶ 77. The undisputed facts in the present case support a finding that both Brittany and Tina were residents of Whitbeck's household. Although Brittany stayed with her father during the summer, both Tina and Brittany stayed at Whitbeck's home for a substantial period of time. Courts have held that people might be residents of more than one household at a time. *See, e.g., Ross,* 204 Wis. 2d at 360. Also, in *Ross,* the court of appeals noted: "Generally, residency and custody are inexorably linked." *Id.* at 359. Tina had sole custody of Brittany. Brittany may have been a resident of both her father's and Whitbeck's households, but she was at least a resident of Whitbeck's. Brittany lived there for several months with her mother and attended school in Mt. Horeb. She stayed at the home with Whitbeck while her mother was at work. Her clothes, toys, and bike came along to Wisconsin.

¶ 78. Tina lived in Whitbeck's household continuously from May to December. She obtained full-time employment, received mail at the Mt. Horeb residence, and did her banking in Wisconsin. She obtained a Wisconsin driver's license and leased a car in Wisconsin. Tina brought large items such as a television, a bed, and a clothes dryer with her to Whitbeck's residence. Whitbeck paid all the rent, while Tina paid some of the other bills. Although Brittany and Whitbeck apparently did not get along, Whitbeck watched the six year old while Tina was at work. Whether they ate together is of little

consequence, considering Whitbeck worked a schedule opposite to Tina's. This was clearly not an arm's length arrangement, and the stay involved more than a "mere temporary sojourn."

¶ 79. Although Brittany and Tina may have desired to return to Kentucky, their intent is not wholly determinative of this matter. In *Maca*, both father and son considered the arrangement temporary and the son sought to leave, but this court nonetheless found that the son was a resident. 26 Wis. 2d at 407–08. In *Ross,* the court of appeals found, citing *Pamperin,* that a child's intent regarding residency is a factor to consider, but is not controlling. *See Ross,* 204 Wis. 2d at 358–59. There, the child ran away from his father's home to live with his mother and gained an injunction preventing his father from having contact with him for a year. *Id.* at 357. The child said he intended to live with his mother permanently, although his father had custody of him. *Id.* at 356–57. Despite these facts, the court of appeals held: "Because [the child] could not choose his residence, his intention as to where he would live is given little weight." *Id.* at 359. Under the present facts, I would find that both Brittany and Tina Frost were clearly residents of Whitbeck's household when the alleged dog bites occurred.

¶ 80. Because I conclude that Tina Frost is a relative of Whitbeck under this policy and that both Tina and Brittany were residents of Whitbeck's household, I would reverse the decision of the court of appeals and grant summary judgment in favor of American Family.

¶ 81. I am authorized to state that Justices N. PATRICK CROOKS and DIANE S. SYKES join this opinion.