SHIRLEY S. ABRAHAMSON, C.J.
¶ 66. (,dissenting). I would reverse the decision of the court of appeals.
¶ 67. This case requires us to interpret the standard pollution exclusion clauses in a commercial general liability policy and a contractors' general liability policy.
¶ 68. The majority opinion frames the question presented in this case as "whether decomposing septage is a pollutant as it seeped into the Preislers' water supply."[1] The majority opinion then holds that "a *161 reasonable insured would conclude that the policies would not provide coverage on these facts."[2]
| 69. The majority opinion's approach to the pollution exclusion clauses in the instant case unnecessarily departs from precedent, undercuts the limiting principles our prior cases have applied to pollution exclusion clauses, and further confuses this murky area of the law.
¶ 70. The majority opinion needlessly decides what "occurrence" triggered coverage in the instant case and further complicates the law in this area. The question of what constitutes an occurrence need not be decided to resolve the question presented. The occurrence issue was neither raised nor briefed by the parties and was not ruled on by the circuit court or the court of appeals. The issue is complex.[3] The court should not delve into it without the benefit of briefs or argument.
¶ 71. Furthermore, the majority opinion's discussions of what constitutes an occurrence and of whether a substance is a pollutant are inconsistent with the court's approach to those issues in Wilson Mutual v. Falk, 2014 WI 136, ¶ 38, 360 Wis. 2d 67, 857 N.W.2d 156. I write on substantially similar issues in my dissent in Wilson Mutual. My dissents in Wilson Mutual and in the instant case should be read together.
¶ 72. I conclude that a reasonable person in the position of the insureds, two companies in the business of hauling, storing, and disposing of septage, would not consider septage a pollutant under the pollution exclu *162 sion clause of general liability policies they purchased to cover liability for damage caused by their septic business operations.
¶ 73. If the majority is unwilling to honor the reasonable expectations of these insured septic companies, then I conclude the case should be remanded to the circuit court to allow the parties to present evidence regarding the insureds' expectations of coverage and the objective reasonableness of those expectations.[4]
¶ 74. Accordingly, I dissent.
I
¶ 75. The present case involves two insured companies and two insurance policies.[5]
¶ 76. Kuettel's Septic Service, LLC (Kuettel's) is a company that hauls, stores, and disposes of septage. Kuettel's sometimes disposes of septage by spreading it as fertilizer on farmland. Kuettel's has periodically hired Phil's Pumping and Fab, Inc. (Phil's Pumping) to dispose of septage. Phil's Pumping sometimes disposes of the septage by spreading it as fertilizer on farmland.
¶ 77. These septic companies purchased general liability policies to insure their business operations, that is, they purchased insurance policies to cover damage they might cause in the ordinary course of their hauling, storing, and disposing of septage.
*163 ¶ 78. Kuettel's purchased a contractors' general liability policy from Regent Insurance Company. The Regent policy contains the following provisions:
B. EXCLUSIONS
1. Applicable to Contractors Liability Coverage
This insurance does not apply to:
f. Pollution
(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants"....
F. LIABILITY AND MEDICAL EXPENSES DEFINITIONS
14. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
16. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.
¶ 79. Phil's Pumping purchased a commercial general liability policy from Rural Mutual Insurance Company. The Rural Mutual policy contains the following provisions:
*164 2. Exclusions
This insurance does not apply to:
f. Pollution
2(1) "Bodily injury" or "property damage," arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants"....
SECTION V - DEFINITIONS
13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.
¶ 80. For several years, Kuettel's and Phil's Pumping spread septage on Fred and Tina Preisler's farmland. In 2008, when the Regent and Rural Mutual insurance policies described above were in effect, the Preislers discovered that septage had seeped into their well and contaminated their water supply, causing cattle loss and other problems on their farm.
¶ 81. The Preislers sued Kuettel's and Phil's Pumping, alleging that the companies negligently stored and spread septage, resulting in nuisance and trespass. Kuettel's and Phil's Pumping contend that septage is not a pollutant under the pollution exclusion *165 clauses at issue and thus that Regent and Rural Mutual should defend and indemnify under the policies.
II
¶ 82. Applying the court's general principles of insurance contract interpretation[6] to the facts of the present case, I conclude that a reasonable person in the position of these insured septic companies would not consider septage a pollutant under the pollution exclusion clause of a general liability policy purchased to cover liability for damage caused by their septic business operations.
¶ 83. Excrement may be waste, an irritant, or a contaminant, but septage is a valuable product. It is a fertilizer used to enrich the soil. When it is used to enrich the soil, it is no longer waste, an irritant, or a contaminant.
¶ 84. Because we construe insurance contract provisions as would a reasonable insured, we have held that pollution exclusion clauses do not apply when "injuries result [] from everyday activities gone slightly, but not surprisingly, awry" or when a reasonable policyholder "would not characterize . . . [the] incident [] as pollution."[7]
¶ 85. To septic companies like Kuettel's and Phil's Pumping, storing and spreading septage are indisputably everyday activities. Septic companies store septage and often spread septage on farmland. *166 Seepage is the whole point of spreading septage on farmland. If the seepage of septage into the Preislers' well resulted from the storage of septage or the spreading of septage on farmland, then it clearly resulted from an everyday activity "gone slightly, but not surprisingly, awry."[8]
¶ 86. A court keeps the underlying purpose of the insurance in mind when construing policy provisions.[9] Kuettel's and Phil's Pumping purchased these general liability policies to insure their septic business operations. The insurance companies knew the nature of the business these companies are engaged in from their company names and probably from information submitted in their insurance policy applications. "Certainly an insured who purchases [commercial general liability] insurance expects to be covered for ordinary negligence in the course of its insured operations."[10]
¶ 87. The fact that "[h]auling, storing, and applying septage are activities regulated by both the DNR and the United States Environmental Protection Agency" further supports my conclusion that Kuettel's and Phil's Pumping were aware of the risks of working with septage and thus purchased general liability insurance policies to cover their liability for damage caused by their septic business operations when an everyday activity went slightly but not surprisingly awry.[11]
*167 ¶ 88. Thus, a reasonable person in the position of these insured septic companies would expect coverage for damage caused by septage under a general liability policy it purchased precisely in order to cover damage caused by its septic business operations. An insured's reasonable expectations of coverage must be honored. I would not bar coverage.
¶ 89. The majority opinion is problematic for several reasons.
¶ 90. First, as I stated previously, the majority opinion has an unnecessary discussion of occurrence, an issue that is not relevant and was not briefed or argued by the parties.
¶ 91. Second, the majority's discussion of occurrence is inconsistent with the discussion of occurrence in Wilson Mutual. It remains unclear whether this court considers the cause of the damage or the damage itself to be the occurrence.
¶ 92. The majority opinion suggests that it is taking the cause approach.[12] The Preislers' complaint alleges negligence in the storing and spreading of septage. Couldn't the causal event, and thus the accident for which the insureds seek coverage, be the negligent storing or spreading of septage, rather than seepage?
¶ 93. In her concurring opinion in the instant case, Justice Bradley persuasively explains that the majority opinion's discussion of occurrence is unnecessary, internally contradictory,[13] and inconsistent with Wilson Mutual v. Falk, 2014 WI 136, ¶ 32, 360 Wis. 2d *168 67, 857 N.W.2d 156.1 join Justice Bradley's criticism of the majority opinion's discussion of "occurrence."
¶ 94. Third, the essence of the majority's analysis is that septage becomes a pollutant under the policy when it pollutes. Under this reasoning, every substance that pollutes is a pollutant. This reasoning simply begs the question.
¶ 95. By contending that a substance becomes a pollutant under the policy at the moment the substance contaminates, the majority opinion allows the pollution exclusion clause to extend far beyond the limited scope we have permitted in our prior cases, leading to absurd results.
¶ 96. The majority's approach ignores the fact that "there is virtually no substance or chemical in existence that would not irritate or damage some person or property."[14] As this court has said again and again, "[t]he reach of the pollution exclusion clause must be circumscribed by reasonableness, lest the contractual promise of coverage be reduced to a dead letter."[15]
¶ 97. Fourth, Wilson Mutual and the instant opinion are inconsistent in their test for whether a substance is a pollutant under a standard pollution exclusion clause, although both look to whether a reasonable person in the position of the insured would consider the substance a pollutant.
¶ 98. The instant case simply asks "whether a reasonable insured would consider decomposing septage to be a pollutant when it seeps into a water supply."[16]
*169 ¶ 99. Wilson Mutual sets forth the following two-part test for whether a reasonable insured would consider a substance a pollutant:
[A] reasonable insured would consider a substance to be a pollutant if (1) the substance is largely undesirable and not universally present in the context of the occurrence that the insured seeks coverage for; and (2) a reasonable insured would consider the substance causing the harm involved in the occurrence to be a pollutant.[17]
¶ 100. Does the Wilson Mutual two-part test survive the opinion in the present case?
¶ 101. Fifth, as I have noted, the parties in the instant case are here on summary judgment. If the majority is unwilling to adhere to our longstanding practice of honoring the expectations of the reasonable insured, then I would remand the case to the circuit court so the parties can produce evidence regarding the insureds' expectations of coverage and the objective reasonableness of those expectations. Summary judgment should not be granted before the parties have that opportunity.
¶ 102. In sum, I conclude that a reasonable person in the position of the insureds, two companies in the business of hauling, storing, and disposing of septage, would not consider septage a pollutant under the pollution exclusion clause of general liability policies they purchased to cover liability for damage caused by their septic business operations.
¶ 103. For the reasons set forth, I dissent.

 Majority op., ¶ 31.

 Id., ¶ 51.

 Steven Plitt et al., 9 Couch on Insurance § 126:27 (1997) ("Whether there has been an accident or occurrence to trigger insurance coverage has been a much litigated issue.").

 See majority op., ¶ 51 n.ll ("One could wonder what conversation transpired between the insurance agent and the Kuettels yielding insurance policies that do not cover harm caused in the course of their chosen business. However, the actions of the insurers and their agents are not before us.").

 As the majority opinion points out, there were other insurers and other insurance contracts involved at earlier stages of the litigation.

 See Frost ex rel. Anderson v. Whitbeck, 2002 WI 129, ¶¶ 15-22, 257 Wis. 2d 80, 654 N.W.2d 225. I set forth these principles at length in Wilson Mutual Insurance Co. v. Falk, 2014 WI 136, ¶ _, 360 Wis. 2d 67, 857 N.W.2d 156 (Abraharnson, C.J., dissenting).

 Donaldson v. Urban Land Interests, Inc., 211 Wis. 2d 224, 233, 564 N.W.2d 728 (1997).

 Id.

 Frost, 257 Wis. 2d 80, ¶ 22 ("[I]n construing an insurance policy as it is understood by a reasonable person in the position of the insured, a court may consider the purpose or subject matter of the insurance, the situation of the parties, and the circumstances surrounding the making of the contract.").

 Keggi v. Northbrook Prop. & Cas. Ins. Co., 13 P.3d 785, ¶ 29 (Ariz. 2000).

 Majority op., ¶ 43.

 Majority op., ¶ 28.

 "It is unclear whether the majority is embarking on a cause approach or damage approach in determining what constitutes an occurrence." Justice Bradley's concurrence, ¶ 61.

 Donaldson, 211 Wis. 2d at 232 (quoting Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co., 976 F.2d 1037, 1043 (7th Cir. 1992)).

 Donaldson, 211 Wis. 2d at 233.

 Majority op., ¶ 40.

 Wilson Mutual v. Falk, 2014 WI 136, ¶ 38, 360 Wis. 2d 67, 857 N.W.2d 156.